## Mechanics, Inc. v. On-Line Systems, Inc.

Before Wentley and Doyle, JJ.

*Wayne D. Bradley*, for plaintiff.
*Robert W. Smiley*, for defendant.

DOYLE, J., March 6, 1973.—The matter is before the court on defendant's preliminary objections (demurrer) to the complaint.

The complaint avers that on August 18, 1971, defendant landowner and its architect published plans and specifications for the construction of a specialized "computer building," including, inter alia, specifications for plumbing materials and labor to be incorporated into the structure for heating, air conditioning and fire protection. Plaintiff avers that the specifications were disseminated throughout the construction industry for the purpose of inducing bids from general contractors and mechanical subcontractors. The specifications included a proposed contract (herein, "form

of contract") which the defendant-owner intended to enter into with the successful bidder for the general contract. The "form of contract" provided that a "Waiver of Mechanic's Lien" agreement would be filed and that the general contractor would be required to furnish performance and labor and materialmen's bonds with sureties for the benefit, inter alia, of plaintiff. Plaintiff avers that defendant by "generally accepted custom, usage and practice in the construction industry" knew, or should have known, that subcontractors are induced to bid by, and rely on, representations contained in said proposals by owners and that plaintiff relied on the "representation" that surety bonds would issue for its protection when, on September 24, 1971, it contracted with McKnight Construction Company (McKnight) to perform said plumbing work and supply the necessary materials therefor for the adjusted sum of $127,746. Plaintiff's subcontract contains a waiver of the right to file a mechanic's lien.

Defendant-owner and McKnight did not enter into the general contract until October 5, 1971; it contained no surety bond provisions; nor were surety bonds for performance or payment of labor and materialmen ever issued by defendant or McKnight.

Plaintiff then avers that defendant-owner was obligated to disclose to plaintiff that the general contract contained no such bond provisions and that defendant willfully concealed from plaintiff this omission from the final general contract. Thereafter, plaintiff commenced performance, negotiated for additional work at a cost of $3,596 and further additional work on the automatic sprinkler fire protection system at a cost of $2,180. Plaintiff did not learn until July 24, 1972, that no surety bonds had been posted and that the general contract contained no bond requirements.

On August 4, 1972, plaintiff, et al., were advised that

general contractor McKnight was insolvent (later, a receiver was appointed in this court). McKnight has paid to plaintiff the sum of $69,175. This trespass action is brought to recover the remaining sums of $58,571 plus reasonable attorney's fees.

Although the word "deceit" does not appear in the pleadings, it is evident that plaintiff's cause of action is grounded on the intentional tort of deceit, defined in Restatement 2d, Torts, §525, et seq., and countless Pennsylvania cases as a fraudulent misrepresentation of a material fact in a business transaction calculated to induce reliance and which does, in fact, induce reasonable and justifiable reliance to the detriment of the reliant.

Plaintiff, in effect, claims that after he executed his written subcontract with McKnight and had wholly or partially performed the same, he was interested in being paid for his labor and materials and that vital to payment was the existence of a general contractor who was able to pay. He asserts that the ability to pay, as a matter of custom, usage and practice in the industry, is secured either by payment bonds naming the general contractor as obligor and all persons situate in the position of plaintiff as obligees, *or* by permitting plaintiff and other subcontractors to file mechanics' liens, obtain judgments and execute on the judgments.

Defendant claims (1) that, at the time plaintiff entered his subcontract with McKnight, no general contract existed between defendant-owner and McKnight; ergo, plaintiff could not possibly have relied upon a nonexistent general contract. However, while no legally enforceable document existed, a "form of contract" did exist. Defendant also asserts (2) that at the time it entered the general contract with McKnight it could not possibly discharge any supposed duty to advise plaintiff of changes in the general contract (as

compared with the original proposed contract) since, as owner, it would not know of the existence or identity of subcontractors. In addition, (3) defendant argues that, at most, plaintiff is in a position of a donee-beneficiary and, as such, would normally have no rights, and that (4) the Mechanic's Lien Law of August 24, 1963, P. L. 1175, 49 PS §§1101, 1406, et seq., vests no rights in plaintiff, a subcontractor, against the owner, and further asserts (5) that any reliance upon a "form of contract" not then yet executed would be unreasonable reliance as a matter of law, and that (6) no fraud is involved, since no duty to disclose existed.

All of the above well-argued points made by defendant are contained in counsel's excellent brief. However, in the procedural situation obtaining, a demurrer, we are required to accord to plaintiff every favorable inference and to construe the pleadings in favor of plaintiff. In the complaint, plaintiff avers that defendant, by "generally accepted custom, usage and practice in the construction industry" knew or should have known that subcontractors are induced to bid by, and rely on, representations contained in said proposals by owners and that, in fact, plaintiff did rely on the representation, contained in the "form of general contract," that surety bonds would issue for its protection when it, plaintiff, contracted with McKnight to perform the plumbing work involved. Pennsylvania courts have adopted Restatement, Contracts, §248 and §249, and indeed all of the matters under the topic "Usage" preceding section 245. Fisher v. Congregation B'nai Yitzhok, 177 Pa. Superior Ct. 359 (1955), clearly holds that:

" 'When a custom or usage is once established, in absence of express provision to the contrary it is considered a part of a contract and binding on the parties though not mentioned therein, the presumption being that they knew of and contracted with reference to it.' "

106

At this stage of the case, particularly in the procedural situation facing us, we must permit plaintiff, if he can, to prove the custom or usage on which he allegedly relied. Further, he must be afforded the opportunity to prove that, under the circumstances, he was a victim of a deceit. See Restatement, Torts, §525, et seq.

It may be that defendant was duty bound to disclose to plaintiff any material omissions from the final general contract even though plaintiff had executed the subcontract prior to the formal execution of the general contract, especially where the right to file a mechanic's lien was waived, perhaps for the reason plaintiff's principals thought that the final general contract would contain bond provisions protecting the right of recovery in case McKnight became insolvent. See 49 PS §1406, supra.

An appropriate order will be entered.

## ORDER

And now, March 6, 1973, after consideration of the oral arguments and briefs filed by counsel, defendant's demurrer is overruled. Defendants are granted 30 days in which to file any additional pleadings.