# Electric Reduction Co. *v.* Colonial Steel Co., Appellant.

*Practic, C. P.—Pleading—Statement of claim—Averment as to custom—Act of May 14, 1915, P. L. 483—Custom.*

1. Under the Act of May 14, 1915, P. L. 483, a statement of claim should contain and contain only a concise statement of plaintiff's claim, and should not embody evidence.

2. Where the statement avers that a product sold by plaintiffs was "free from tin," and avers that these words "had a definite and universal meaning and usage with respect" to the product, setting forth such meaning, and plaintiff produces proof of such usage and custom, and defendant offers counter proof, defendant cannot complain on appeal that the statement did not warrant the admission of evidence as to the usage or custom.

*Custom—Established—Antiquity—Contract—Meaning of words —Written instrument—Parol evidence—Custom as part of contract.*

3. The rule that parol evidence is not admissible to vary a written instrument, does not apply, in its ordinary strictness, where the existence of a custom or usage, to explain the meaning of words in a writing, is concerned.

4. If, in reference to the subject-matter of a contract, particular words and expressions have, by usage or custom, acquired a meaning different from that of their ordinary meaning, the parties using such words must be taken to have used them in their peculiar sense, and that sense may be fixed by parol evidence. In such case the law makes the custom a part of the contract.

5. The existence of a usage or custom is generally regarded as a question of fact for the determination of the jury, when the evidence is conflicting.

6. Before a usage may be denominated a custom it is essential that it be certain, continuous, uniform and notorious, so certain and uniform as to be not only valid and enforceable in a court of law, but the parties must be presumed to have known it and acted with reference to it.

7. The usages of a particular trade or business are presumed to be known to those engaged therein.

8. The elements of antiquity need not be shown in the case of a usage or custom of trade. All that is required is to show that it is established.

9. In an action for breach of a contract to purchase ferro-tungsten powder, where the written agreement provides that it shall be "free from tin" the plaintiff establishes his right to a judgment on a verdict in his favor, where he shows, by the testimony of experts, although contradicted, that the words "free from tin" used in connection with a sale of ferro-tungsten powder meant in the trade a commodity so far free from tin that it would not cause any impairment of steel produced for the purpose for which the steel is used, and that the powder supplied was of this character.

Argued October 17, 1922. Appeal, No. 124, Oct. T., 1922, by defendant, from judgment of C. P. Allegheny Co., April T., 1921, No. 1999, on verdict for plaintiff, in case of Electric Reduction Co., for use of Molybdenum Corporation of America v. Colonial Steel Co. Before FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Assumpsit for breach of contract. Before DREW, J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiffs for $24,548.21. See 70 Pittsburgh L. J. 833. Defendant appealed.

*Errors assigned* were various rulings and instructions, sufficiently appearing by the opinion of the Supreme Court, quoting record.

*John C. Bane,* with him *Burgwin, Scully & Burgwin,* for appellant.—Plaintiffs' contention, if sustained, would introduce into the contract in writing an alleged usage which is at variance with the express language thereof: Krehl v. Mosser, 264 Pa. 403, 406; Partridge v. Life Ins. Co., 15 Wallace (U. S.) 573; Roylance Co. v. Descalzi, 243 Pa. 180.

The testimony was insufficient to establish a custom: Adams v. Ins. Co., 76 Pa. 411; Ambler v. Phillips, 132 Pa. 167; Essington Enamel Co. v. Fire Ins. Co., 45 Pa. Superior Ct. 550; Coxe v. Heisley, 19 Pa. 243.

*Charles F. C. Arensberg,* with him *James S. Crawford,* of *Patterson, Crawford, Miller & Arensberg,* for appellee.—The usage of trade is admissible in evidence to explain a contract which is doubtful or ambiguous, or where words are used in a sense different from their ordinary meaning: Morris v. Supplee, 208 Pa. 253; Coxe v. Heisley, 19 Pa. 243; Roylance Co. v. Descalzi, 243 Pa. 180; Bubb v. Oil Co., 252 Pa. 26; Warner-Godfrey v. Sheinman, 273 Pa. 105; Franklin Sugar Refining Co. v. Howell, 274 Pa. 190; Carter v. Coal Co., 77 Pa. 286; Hires Co. v. Stromeyer, 65 Pa. Superior Ct. 241; Elk Textile Co v. Cohen, 75 Pa. Superior Ct. 478.

OPINION BY MR. JUSTICE SCHAFFER, January 3, 1923:

This action is assumpsit to recover the purchase price of ferro-tungsten powder sold and delivered by plaintiff to defendant. The verdict was for plaintiff for the full amount of its claim; following the entry of judgment thereon, defendant appealed.

Plaintiff is a manufacturer of ferro-tungsten powder, defendant of high-speed steel used in the making of tools and cutlery. The commodity, the subject of the suit, is a

very important component of the kind of steel produced by appellant.

The parties entered into a written contract evidenced by two letters, by which plaintiff agreed to sell and deliver to defendant 50,000 pounds of contained tungsten in ferro-tungsten powder, according to an analysis providing that it should be "free from copper, tin and all other impurities." The entire quantity sold was delivered to and received by defendant in five separate consignments. The first shipment was accepted and paid for and a substantial sum was also paid on account of three of the last four. After this latter payment, defendant caused analyses to be made of these four consignments, which showed they all contained tin. Appellant notified plaintiff of this fact and of rejection of the material and requested instructions as to its disposition. No reply was made to the communication; in a short time the writ in this case issued.

The dispute between the litigants grows out of the interpretation of the words in the contract "free from ......tin," it being admitted that the article supplied did contain this mineral. Plaintiff contends there is a general, definite and universal meaning and usage with respect to the sale of ferro-tungsten powder, whereby the words "free from tin" mean, commercially free from this element, and that, in the contract, these words were so used by the parties; the correctness of this contention was denied by defendant; the action was tried on this one question.

Witnesses called in plaintiff's behalf testified the words in the trade mean, that tin does not exist in sufficient quantity to impair the quality of the finished steel, that the tin in the samples analyzed was not sufficient in amount to impair defendant's product, and that this customary meaning of the words was general and universal and known and recognized in the trade; those for defendant denied there was such custom or trade meaning, averred the words mean what they say, and

that in the manufacture of steel such as that made by defendant the presence of tin is a disadvantageous element and deleterious thereto.

In considering the case in its broad aspect, it is worthy of note that the first shipment, which defendant accepted and used without protest, according to plaintiff's analysis, contained tin to a greater amount than the subsequent deliveries, and the president of defendant called as a witness in its behalf testified that the cause of the rejection of the other shipments was by reason of "the contents of tin being too high." An analysis of the material in question by Ledoux & Company, vouched for by witnesses on both sides as the recognized authority in the United States in the analysis of ferro-tungsten, showed it to contain but a trace of tin. There was also evidence from which the jury could have found, that there is no ferro-tungsten powder absolutely free from tin, and testimony warranting the conclusion that in the manufacture of the best quality of high-speed steel, such as manufactured by defendant, ferro-tungsten with a higher tin content than appeared in the shipments in question can be used without affecting the finished material.

Appellant challenges the recovery against it in the following respects: (1) the averments of plaintiff's statement were not such as to warrant the admission of evidence to show the existence of a custom or usage; (2) parol evidence was inadmissible to vary or add new elements to the written contract; (3) the instructions to the jury, concerning the meaning of the language of the contract and the effect of parol evidence to contradict or vary the meaning of the language therein, were erroneous; (4) the evidence was insufficient to establish the existence of a custom or usage.

Was evidence of the custom introducible under the statement of claim? It set forth "Plaintiff further avers that the words used in the said contract 'free from copper, tin and all other impurities' have a definite and universal meaning and usage with respect to the sale of

tungsten powder; that the same mean commercially free from copper, tin and all other impurities, and that the words used in the said contract were so used by the parties thereto." We think this averment was sufficient to warrant the introduction of the testimony. The case was tried on the single issue of the meaning of the words in question. Defendant met plaintiff's case with substantial testimony on this issue, in an endeavor to combat the allegation, was not surprised and did not ask for a continuance. Having chosen to proceed with the trial and to meet the testimony with counter proof, taking its chances with the jury, defendant is not in position to successfully urge that he was not fully apprised of plaintiff's position and not ready to meet it. The averments of the statement gave notice of the dispute between the parties and the testimony adduced was in line with the allegations. A statement of claim should be a concise statement of the plaintiff's claim and should not embody evidence. "Every pleading shall contain, and contain only a statement in a concise and summary form of the material facts on which the party pleading relies for his claim, or defense, as the case may be, but not the evidence by which they are to be proved": Act of May 14, 1915, P. L. 483, section 5. "The Practice Act of May 14, 1915, P. L. 483, does not require the details of matters intended to be proved, or the evidence relied on, to be set forth in the pleadings": Kress House Moving Co. v. George Hogg Co., 263 Pa. 191, 194.

The second and third questions raised by appellant go to the admissibility of parol evidence to vary or add to the written contract and the instructions to the jury in connection therewith; these can be considered together. The parol evidence rule does not apply in its ordinary strictness where the existence of a custom or usage to explain the meaning of words in a writing is concerned. "The primary purpose in permitting parol evidence of a custom to be introduced when the construction of a written contract is involved is to enable the court to arrive

at the real meaning and intention of the parties, where this cannot be ascertained by the terms of the contract": 27 Ruling Case Law, p. 169. "While words in a contract relating to the ordinary transactions of life are to be construed according to their plain, ordinary and popular meaning, yet, if, in reference to the subject-matter of the contract, particular words and expressions have by usage acquired a meaning different from their plain, ordinary and popular meaning, the parties using those words in such a contract must be taken to have used them in their peculiar sense and that sense may be fixed by parol evidence. The evidence is not incompetent because the words are in their ordinary meaning unambiguous, for the principle of admission is that words perfectly unambiguous in their ordinary meaning are used by the parties in a different sense": 17 Corpus Juris 498 and note. The admission of evidence of a custom is not dependent on the rule that parol evidence is inadmissible to vary a writing, nor inconsistent therewith, but upon the ground that the law makes the custom a part of the contract: Branch v. Palmer, 65 Ga. 210. "The liberal rule, on the other hand, is to-day conceded, practically everywhere, to permit resort in any case to the usage of a trade or locality, no matter how plain the apparent sense of the word to the ordinary reader; and some of the extreme instances are persuasive to demonstrate the fallacy of ignoring the purely relative meaning of words and the injustice of attempting to enforce a supposed rigid standard......Where all the parties are members of the same trade......little difficulty can arise; the only requirement is that the special sense alleged should be in fact a usage, or settled habit of expression, and not merely the expression of a few persons or of casual occasions": 4 Wigmore on Evidence, sections 2463, 2464, pages 3486, 3489. In Roylance v. Descalzi, 243 Pa. 180, we said: "Where a word with a special meaning or a trade phrase appears in a contract, it is competent, if justice so requires, to introduce evidence

to show the real sense in which such word or words were used, or, in a proper case, that they have a generally known fixed trade significance; for the theory is that when a trade meaning of this character is established, the parties are presumed to have contracted with a view and in relation thereto, as much as though the special meaning of the words were expressed at large." Guillon v. Earnshaw, 169 Pa. 463, is we think on principle more closely analogous to the case in hand than any other which has come to our attention; it was there decided that where terms are used in a contract which are known and understood by a particular class of persons in a certain special or peculiar sense, evidence to that effect is admissible, for the purpose of applying the instrument to its proper subject-matter. In that case the defendant agreed in writing to purchase from the plaintiffs iron ore at a stipulated price per ton guaranteed to contain a yield of 50% of iron in the natural state. Plaintiff offered to prove that it was the custom at the place of shipment to fix the standard at 50%, with a sliding scale to regulate the price according to the result of the assay of the cargo when discharged; that when a sliding scale was thus fixed for the rise or fall of the price of iron ore, the purchaser was obliged to receive the mineral, provided it did not go below 45% or 46%. The defendant claimed that the ore showed only 48 and 49 per cent of iron and was not therefore in accordance with the contract. Reversing the court below, we held that the testimony as to the custom of the trade at the point of shipment was admissible. Speaking through Chief Justice MITCHELL, in Morris v. Supplee, 208 Pa. 253, 257, we said: "It is argued that even if such a customary trade meaning were proved it would be bad as contradicting the plain terms of the contract. But this view overlooks the fact that the terms are not plain in the sense that they are not susceptible of more than one meaning, even though one meaning may be to some extent at variance with the literal definitions of the words used. It is with-

in the juridicial knowledge of some members of the court, that in some branches of business in this State a cash sale means a sale to be paid for within thirty days, and that if a different contract is intended. the custom is to use some additional word, such as 'cash on delivery' (c. o. d.) 'spot cash,' etc., to indicate that delivery and payment are to be simultaneous. Yet it has never been held that such a trade custom is bad as contradicting the expressed terms of the contract." In the recent case of Warner-Godfrey Co. v. Sheinman, 273 Pa. 105, parol evidence of a trade custom was admitted as to the width measurement of goods sold, and in Miller v. Wiggins, 227 Pa. 564, to show the meaning of the words "measured in wall." The Court of Appeals of New York upheld the admission of evidence to show there was a trade custom as to variation and thickness of paper in Oswega Falls Pulp & Paper Co. v. Stecher Lithographic Co., 215 N. Y. 98, although the custom varied the express terms of the contract. The Supreme Court of Illinois in Leavitt v. Kennicott, 157 Ill. 235, where a contract provided for the payment of the manager of a theatre "at a weekly salary of $40 per week," ruled that evidence was admissible to show that the "weeks" referred to were by the custom and usage of the theatrical profession the weeks of the theatrical season and not all the weeks of the year. Our own case of Lovering v. Miller, 218 Pa. 212, deals with a somewhat similar state of facts and upholds the admission of parol evidence to show in common understanding of the theatrical business what the terms used in the contract there under consideration meant.

On this question of the inadmissibility of parol evidence to contradict the language of the contract, appellant cites the case of Krehl v. Mosser, 264 Pa. 403, in which the endeavor was made to prove a trade custom as to the sale of two grades of hides, the custom set up being that in a sale of different grades of hides there is an arbitrary proportion of each. The offer was excluded, not on the ground that the custom could not be shown, but

because the evidence tendered did not establish such custom. Burton v. Forest Oil Co., 204 Pa. 349, an action to recover rental on an oil and gas lease, is brought to our attention as sustaining appellant's position. There it was sought to prove the trade meaning of the word "gas", that in the oil and gas business the word means gas derived from a gas well and not from an oil well. The lease granted the right to drill and operate for "petroleum, oil or gas." It was held that as the right was given to drill for petroleum, oil or gas and as the consideration to be paid for the gas did not depend on whether it was obtained from an oil well or a gas well but whether it was obtained in the language of the contract "in sufficient quantities to utilize," parol evidence was not admissible for the purpose of making a new and different agreement for the parties. That case is not free from difficulty in its application to the case at bar. If it should be held an authority on the inadmissibility of parol evidence to establish a trade meaning for otherwise unambiguous words, it is out of line with all our own cases, those from other states and all the textbook authorities. The point of the case is, that the contract expressly provided that all utilizable gas should be paid for, and a trade custom as to the meaning of the word "gas", could not affect the plain terms of the writing in this respect. Roylance v. Descalzi, 243 Pa. 180, where it was alleged that certain words in a contract constituted a trade phrase, is also cited by appellant's counsel; that case, however, was ruled on the proposition that it had not been sufficiently shown by competent evidence that the words had a generally known trade meaning. It was pointed out in the opinion that where words with a special meaning or a trade phrase appear in a contract, it is competent to introduce evidence to show the real sense in which such words were used or that they have a generally known fixed trade significance.

Our conclusion is that in the case before us parol evidence was properly admitted to show the trade meaning of the words in dispute.

As to appellant's fourth proposition, that the evidence was insufficient to establish the existence of a custom or usage, the record discloses that, to establish such a custom, plaintiff called a number of witnesses, among them chemists and metallurgists of high repute familiar with the material in question, its uses and sale, and purchasing agents connected with steel plants manufacturing steel similar to that produced by defendant, which were large users of ferro-tungsten powder, all being familiar with its purchase and with the trade customs relative thereto, who testified in substance that the expression "free from tin" in connection with buying and selling ferro-tungsten had a recognized trade meaning, which is, that it signifies the commodity is so far free from tin that it will not cause any impairment of the steel produced for the purpose for which it is used. Particularizing these witnesses, they were G. W. Sargent, formerly in charge of metallurgical work of the Carpenter Steel Company and later metallurgist of the Crucible Steel Company; J. W. Weitzenkorn, formerly manager of the research department of the Crucible Steel Company, a very large concern; Albert M. Smoot, a director in the firm of Ledoux & Company, as before noted the recognized authority in the United States on the analysis of ferro-tungsten; Percy L. Ackerman, purchasing agent of a steel company manufacturing high-speed steel, one of the largest users of ferro-tungsten in steel mills of its kind, and John W. Todd, connected with the Crucible Steel Company as purchasing agent, who purchased large quantities of ferro-tungsten. While it was denied by witnesses called in behalf of defendant that such a custom existed or was known to them, we think under the evidence produced it was for the jury to say whether the custom existed, and they have found it did. "The existence of a usage or custom is generally regarded as a question of fact for the determination of the jury when the evidence is conflicting": 27 Ruling Case Law, p. 196. A mere conflict in the evidence will not prevent the proof

of the custom being sufficient: 17 Corpus Juris 523. Our impression from a reading of all the testimony is, that the witnesses called by defendant were not as well qualified as were those called by plaintiff to speak as to the existence of the custom.

We have had occasion to consider the question of trade customs in the very recent case of Albus v. Toomey, 273 Pa. 303, in which, speaking through Mr. Justice KEP-HART, we charted much of the law on the subject. We there said: (pp. 305-6), "It is essential, before a usage,—combining numerous repetitions of acts extending over a considerable period of time,—may be denominated a custom, that it, be certain, continuous, uniform and notorious.....—so certain and uniform as to be not only valid and enforceable in a court of law, but the parties must be presumed to have known it and acted in reference to it.......While these and other elements are ordinarily for the jury, yet where it appears the custom or usage has been lately established, with but few instances of its recognition, or it lacks other qualities to make it enforceable, the court should determine its nonexistence as a custom without submitting the question to the jury." In the case at bar, there is testimony that the custom is general in the trade and of universal understanding. We have also announced the rule that "The usages of a particular trade or business are presumed to be known to those engaged therein. These may, therefore, in the absence of any express stipulation inconsistent therewith, be supposed to have entered into the understanding of the parties in making the contract:" Carter v. Phila. Coal Co., 77 Pa. 286, 290; see also 17 Corpus Juris, p. 461. Abbott's Trial Evidence, 2d ed., pages 364, 365, thus sums up the authorities: "One who is engaged in a trade or business is bound to know its usages at the place where he acts, and as against himself is presumed by law to have contracted with reference to them. ......Usage of language in a trade must sometimes be competent when evidence of other usages of the trade

would not; for where the usage is adduced, not so much to supply what is unexpressed, as to show the meaning of what is expressed, a further principle is involved, viz., that it is always competent to show by parol the usages of language of those who adopted the writing; and thus what it was in their knowledge that its terms referred to. Hence, although the terms used be apparently unambiguous, evidence is competent to show that in the usage of language in a trade or business in which the words were employed, they had a different meaning." In a recent case (1919) the Supreme Court of Kentucky considered the question we are discussing and determined that to enable a meaning given to a word by custom which is different from its ordinary meaning to prevail in a contract, it must either have been known and understood by the parties when entering into the contract which was made with reference to it, or it must have been in such universal usage that it will be presumed to have been known to the parties: Clarke v. Blue Licks Springs Co., 5 American Law Reports 234, 184 Ky. 827. "Where there is a well-known usage which obtains in a trade or business, it must be presumed that all who are engaged in that trade or business, where it prevails, contract with a view to such usage, unless they excluded the presumption by their contract": 27 Ruling Case Law, p. 162. "General and universal customs applicable to the trade or business are binding upon buyer and seller, unless there is a notice or contractual stipulation that the transaction is without regard to the custom": 17 Corpus Juris 490, and notes embodying many illustrations of the application of the principle. In the instant case, there is evidence of universal usage. "In the absence of evidence that the party to be charged had actual knowledge of a trade custom or usage, it must, in order to be admissible against him, appear to have been so general that he will be presumed to have knowledge of it": 17 Corpus Juris, 454. There was competent evidence that the usage was general in the case in hand.

Franklin Sugar Refining Co. v. Howell, 274 Pa. 190, 194, lays down the rule: "Every agreement is made and to be construed with due regard to the known characteristics of the business to which it relates; and hence the language used in a contract will be construed according to its purport in the particular business, although this results in an entirely different conclusion from what would have been reached, had the usual meaning been ascribed to those words;" the rule there announced is applicable here. Evans v. Western Brass Mfg. Co., 118 Mo. 548, was an action to recover the price for polished marble slabs ordered by the defendant to be of a specified thickness; it was held proper in that case for plaintiff to show that in the marble trade such an order means slabs of the stated thickness as they come from the saw and does not required them to be of such thickness after having been prepared for use.

Appellant contends that the custom set up is not good because not shown to be long established and ancient. The element of antiquity applicable to ordinary, general and local customs does not apply to trade customs. "The elements of antiquity need not to be shown in the case of a usage or custom of trade. All that is required is to show that it is established; that is, that it has existed a sufficient length of time to have become generally known": 17 Corpus Juris 450.

On the contention as to the insufficiency of the evidence to sustain a finding of the existence of a custom or usage, we are referred by appellant, among other adjudications, to Adams v. Pittsburgh Ins. Co., 76 Pa. 411, in which it was sought to establish a general custom as to the powers of captains of steamboats to bind the owners for insurance, where it was held the testimony was not sufficient to establish the custom, but there the witnesses called to establish the custom differed as to what it was; here they are in accord.

The able presentation of this case by counsel for appellant has warranted the fullest investigation of the

principles and authorities relating to the important question discussed. We have carefully examined all the assignments of error and weighed everything urged in defendant's behalf but are impelled to the conclusion that the case was properly decided below.

The assignments of error are all overruled and the judgment is affirmed.