Fisher *v.* Congregation B'nai Yitzhok, Appellant.

360

Argued November 15, 1954.   Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE and ERVIN, JJ.

*Barnet Lieberman,* with him *Charles S. Shotz,* for appellant.

*Samuel I. Sacks,* with him *Lee B. Sacks,* for appellee.

OPINION BY HIRT, J., January 14, 1955:

Plaintiff is an ordained rabbi of the orthodox Hebrew faith.   He however does not officiate except on

occasion as a professional rabbi-cantor in the liturgical service of a synagogue. The defendant is an incorporated Hebrew congregation with a synagogue in Philadelphia. Plaintiff, in response to defendant's advertisement in a Yiddish newspaper, appeared in Philadelphia for an audition before a committee representing the congregation. As a result, a written contract was entered into on June 26, 1950, under the terms of which plaintiff agreed to officiate as cantor at the synagogue of the defendant congregation "for the High Holiday Season of 1950", at six specified services during the month of September 1950. As full compensation for the above services the defendant agreed to pay plaintiff the sum of $1,200.

The purpose upon which the defendant congregation was incorporated is thus stated in its charter: "The worship of Almighty God according to the faith, discipline, forms and rites of the orthodox Jewish religion." And up to the time of the execution of the contract the defendant congregation conducted its religious services in accordance with the practices of the orthodox Hebrew faith. On behalf of the plaintiff there is evidence that under the law of the Torah and other binding authority of the Jewish law, men and women may not sit together at services in the synagogue. In the orthodox synagogue, where the practice is observed, the women sit apart from the men in a gallery, or they are separated from the men by means of a partition between the two groups. The contract in this case is entirely silent as to the character of the defendant as an orthodox Hebrew congregation and the practices observed by it as to the seating at the services in the synagogue. At a general meeting of the congregation on July 12, 1950, on the eve of moving into a new synagogue, the practice of separate seating by the defendant formerly observed was modified and

for the future the first four rows of seats during religious services were set aside exclusively for the men, and the next four rows for the women, and the remainder for mixed seating of both men and women. When plaintiff was informed of the action of the defendant congregation in deviating from the traditional practice as to separate seating, he through his attorney notified the defendant that he, a rabbi of the orthodox faith, would be unable to officiate as cantor because "this would be a violation of his beliefs." Plaintiff persisted in the stand taken that he would not under any circumstances serve as cantor for defendant as long as men and women were not seated separately. And when defendant failed to rescind its action permitting men and women to sit together during services, plaintiff refused to officiate. It then was too late for him to secure other employment as cantor during the 1950 Holiday season except for one service which paid him $100, and he brought suit for the balance of the contract price.

The action was tried before the late Judge FENERTY, without a jury, who died before deciding the issue. By agreement the case was disposed of by the late President Judge FRANK SMITH "on the notes of testimony taken before Judge FENERTY." At the conclusion of the trial, counsel had stipulated that the judge need not make specific findings of fact in his decision. This waiver applied to the disposition of the case by Judge SMITH. Nevertheless Judge SMITH did specifically find that defendant, at the time the contract was entered into, "Was conducting its services according to the Orthodox Hebrew Faith." Judge SMITH accepted the testimony of three rabbis learned in Hebrew law, who appeared for plaintiff, to the effect: "That Orthodox Judaism required a definite and physical separation of the sexes in the synagogue." And he also con-

sidered it established by the testimony that an ortho-
dox rabbi-cantor "could not conscientiously officiate
in a 'trefah' synagogue, that is, one that violates Jewish
law"; and it was specifically found that the old build-
ing which the congregation left, "had separation in ac-
cordance with Jewish orthodoxy." The ultimate find-
ing was for the plaintiff in the sum of $1,100 plus in-
terest. And the court entered judgment for the plain-
tiff on the finding. In this appeal it is contended that
the defendant is entitled to judgment as a matter of
law.

The finding for the plaintiff in this trial without
a jury has the force and effect of a verdict of a jury
and in support of the judgment entered by the lower
court, the plaintiff is entitled to the benefit of the most
favorable inferences from the evidence. *Jann v. Lin-
ton's Lunch,* 150 Pa. Superior Ct. 653, 29 A. 2d 219.
Findings of fact by a trial judge, sitting without a
jury, which are supported by competent substantial
evidence are conclusive on appeal. *Scott-Smith Cadil-
lac Co., Inc. v. Rajeski,* 166 Pa. Superior Ct. 116, 70
A. 2d 454.

Although the contract is silent as to the nature of
the defendant congregation, there is no ambiguity in
the writing on that score and certainly nothing was
omitted from its terms by fraud, accident or mistake.
The terms of the contract therefore could not be varied
under the parol evidence rule. *Bardwell v. The Willis
Company,* 375 Pa. 503, 100 A. 2d 102; *Mathers v. Roxy
Auto Company,* 375 Pa. 640, 101 A. 2d 680. Another
principle controls the interpretation of this contract.

There is sufficient competent evidence in support
of the finding that this defendant was an orthodox
congregation, which observed the rule of the ancient
Hebrew law as to separate seating during the services
of the High Holiday Season; and also to the effect that

the rule had been observed immemorially and invariably by the defendant in these services, without exception. As bearing on plaintiff's bona fide belief that such was the fact, at the time he contracted with the defendant, plaintiff was permitted to introduce in evidence the declarations of Rabbi Ebert, the rabbi of the defendant congregation, made to him prior to signing of the contract, in which the rabbi said: "There always was a separation between men and women" and "there is going to be strict separation between men and women", referring to the seating in the new synagogue. Rabbi Lipschitz who was present, testified that Rabbi Ebert, in response to plaintiff's question "Will services be conducted as in the old Congregation" replied "Sure. There is no question about that" referring to the prior practice of separate seating. The relationship of rabbi to the congregation which he serves does not create the legal relationship of principal and agent. Cf. *Reifsnyder et al. v. Dougherty Tr.*, 301 Pa. 328, 152 A. 98. And Rabbi Ebert in the absence of special authority to speak for the congregation could not legally bind the defendant by his declarations to the plaintiff prior to the execution of the contract. *Davidsville F. Nat. Bk. v. St. John's C.*, 296 Pa. 467, 472, 146 A. 102. But while the declarations of Rabbi Ebert, above referred to would have been inadmissible hearsay as proof of the truth of what was said, yet his declarations were properly admissible as bearing upon plaintiff's state of mind and his intent in entering into the contract. 1 Henry Pa. Evid., 4th Ed., §§22, 469. "Statements tending to show intent are admissible in evidence although self-serving. Ickes v. Ickes, 237 Pa. 582, 591, 85 A. 885": *Smith v. Smith*, 364 Pa. 1, 9, 70 A. 2d 630.

In determining the right of recovery in this case the question is to be determined under the rules of our civil law and the ancient provision of the Hebrew

law relating to separate seating is read into the contract only because implicit in the writing as to the basis—according to the evidence—upon which the parties dealt. Cf. *Canovaro et al. v. Bros. of H. of St. Aug.*, 326 Pa. 76, 86, 191 A. 140. In our law the provision became a part of the written contract under a principle analogous to the rule applicable to the construction of contracts in the light of custom or immemorial and invariable usage. It has been said that: "When a custom or usage is once established, in absence of express provision to the contrary it is considered a part of a contract and binding on the parties though not mentioned therein, the presumption being that they knew of and contracted with reference to it": 1 Henry Pa. Evid., 4th Ed., §203. Cf. Restatement, Contracts, §248(2) and §249. In this case there was more than a presumption. From the findings of the trial judge supported by the evidence it is clear that the parties contracted on the common understanding that the defendant was an orthodox synagogue which observed the mandate of the Jewish law as to separate seating. That intention was implicit in this contract though not referred to in the writing, and therefore must be read into it. It was on this ground that the court entered judgment for plaintiff in this case.

Judgment affirmed.