638 A.2d 972

RESOLUTION TRUST CORPORATION, As Receiver for First Federal Savings & Loan Association of Pittsburgh,

v.

URBAN REDEVELOPMENT AUTHORITY OF PITTSBURGH and Verex Assurance, Inc.

Appeal of URBAN REDEVELOPMENT AUTHORITY OF PITTSBURGH.

Supreme Court of Pennsylvania.

Argued Sept. 20, 1993.

Decided March 16, 1994.

220

Robert M. Brown, Scott D. Cessar, Eckert, Seamans, Cherin & Mellott, Pittsburgh, for appellant.

John Lucas, Meyer, Unkovic & Scott, Pittsburgh, for Resolution Trust Corp.

Jeffrey Morris, Sable, Makoroff & Gusky, P.C., Pittsburgh, for Verex Assurance, Inc.

John W. Fahnestock, Jr., Pittsburgh, for amicus curiae Pittsburgh Nat. Bank.

Before NIX, C.J., and LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and MONTEMURO, JJ.

## OPINION

ZAPPALA, Justice.

The sui generis issue with which we are presented is whether a mortgagee financial institution or a mortgage guaranty insurance company should be held responsible for the misrepresentations of a mortgagor. Because the mortgage guaranty insurance company, in the absence of a policy provision, may show through custom in the trade that the mortgagee financial institution is responsible for the misrepresentations of a mortgagor, we now affirm.

In 1982, Appellant, the Urban Redevelopment Authority of Pittsburgh (U.R.A.), and First Federal Savings and Loan Association of Pittsburgh (First Federal)[1] entered into a Mortgage Loan Purchase, Origination and Servicing Agreement (Agreement) in conjunction with the U.R.A.'s Single Family Mortgage Revenue Bond Program. This redevelopment program, which used Urban Development Action Grant and Community Development Block Grant funds, was established to assist in financing the acquisition, construction, and rehabilitation of residential housing for a broad range of income groups in certain designated areas of the City of

---

1. The Resolution Trust Corporation, as receiver for First Federal Savings and Loan Association of Pittsburgh, has been substituted as the named plaintiff in this case.

Pittsburgh. The proceeds from the sale of the mortgage revenue bonds were used to either purchase or fund the resulting mortgage loans originated by private mortgage lending institutions, such as First Federal.

The Agreement provided, *inter alia,* that the U.R.A. would maintain a mortgage pool insurance policy issued by Appellee, Verex Assurance, Inc. In addition, First Federal was required to maintain a private mortgage insurance policy for that portion of the mortgage and mortgage note in excess of seventy-two percent of the appraised value of the property. This insurance coverage was intended to protect the mortgage holder, U.R.A., in the event of default by the borrower.

On May 11, 1983, Deborah D. Foster made application to First Federal for a mortgage loan under the U.R.A.'s Single Family Mortgage Revenue Bond program. She applied for a loan in the amount of $50,000 for the purchase and rehabilitation of a house in one of the designated areas of the City of Pittsburgh. The loan application, which was completed by a First Federal representative during an interview with Foster and signed by Foster, reflected that Foster would make a down payment of three thousand dollars and that no part thereof consisted of borrowed funds.

Because the mortgage loan was to be in excess of seventy-two percent of the appraised value of the property ($59,000), First Federal submitted to Verex, on June 13, 1983, a mortgage guaranty insurance application. As part of this application process, Verex required and First Federal submitted eleven documents including, *inter alia:* the loan application, an appraisal and a sales agreement for the house, a verification of Foster's bank deposits, a verification of Foster's employment status and income, and a credit report issued by a credit agency. Thereafter, Verex simultaneously issued a Commitment for Insurance and a Certificate of Insurance dated June 21, 1983, each in the amount of $59,000.

On October 5, 1983, First Federal closed the mortgage loan to Foster. First Federal assigned the mortgage loan to the

U.R.A. on the same day in accordance with the terms of the Agreement.

On January 19, 1987, Foster made, executed and delivered to the U.R.A. an Urban Redevelopment Authority of Pittsburgh Equity Participation Mortgage Loan on the same property that she had received a mortgage loan in 1983. The principal amount of the Equity Participation Mortgage Loan was $8,900.

When Foster defaulted on these loans, a claim for loss was filed by First Federal with Verex on June 6, 1988, and a supplemental claim for loss was filed on August 8, 1988. Verex investigated these claims and determined that Foster had borrowed three thousand dollars to make the down payment. Verex, thereafter, gave notice to the U.R.A. that it intended to rescind its certificate of insurance because of the misrepresentation which Foster had made on the mortgage loan application. U.R.A. then requested First Federal to repurchase the Foster loan in accordance with the terms of the Agreement.

First Federal filed a declaratory judgment action against the U.R.A. and Verex to obtain an adjudication as to whether Verex is entitled to rescind the Certificate of Insurance based upon Foster's alleged misrepresentations and to determine the rights of First Federal and the U.R.A. under the Agreement. In response to a motion by First Federal, the Court of Common Pleas of Allegheny County entered a partial summary judgment in favor of First Federal and against Verex on the grounds, *inter alia*, that any alleged fraudulent misrepresentation by the borrower concerning the source of her down payment cannot be imputed to the insured, First Federal.

On appeal, the Superior Court reversed the order of the Common Pleas Court. 412 Pa.Super 351, 603 A.2d 618. In so doing, the court recognized that a policy guaranteeing a mortgage loan could be rescinded on the basis of a mortgagor's material misrepresentation, even though the mortgagee lending institution did not have actual knowledge of the misrepresentation. The court concluded that, although the mort-

gage guaranty insurance policy did not have a provision imputing all representations by the mortgagor to the insured mortgagee, Verex had pleaded and produced evidence of such a custom in the trade so as to give Verex an opportunity at trial to present that defense.

The touchstone for our review is that a motion for summary judgment is properly granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Pa.R.C.P. 1035(b). *Penn Center House, Inc. v. Hoffman,* 520 Pa. 171, 553 A.2d 900 (1989).

Appellant U.R.A. contends that the Verex mortgage guaranty insurance policy does not make the lender responsible for the representations of the borrower. The U.R.A. argues that the Superior Court erred by allowing Verex to effectively add a term to the policy, through the defense of custom in trade, so as to make First Federal responsible for the representations of Foster.

Alternatively, Appellee Verex argues that the Superior Court correctly concluded that the trial court erred in granting partial summary judgment based upon the deposition testimony of the borrower. In raising the *Nanty–Glo* rule, Verex claims that First Federal cannot carry the burden of summary judgment by relying on Foster's deposition that she only borrowed $500 of the down payment because such testimony is contradicted by other evidence, thereby raising an issue as to a material fact.

In determining the existence or non-existence of a genuine issue of material fact, courts are bound to adhere to the rule of *Nanty–Glo Borough v. American Surety Co.,* 309 Pa. 236, 163 A. 523 (1932), which holds that a court may not summarily enter a judgment where the evidence depends upon oral testimony. *Penn Center House, Inc. v. Hoffman,* 520 Pa. at 176, 553 A.2d at 903.

■ The issue before us is not, however, whether Foster fraudulently misrepresented the source of the money that she used as her down payment. Rather, it is whether the alleged misrepresentation of a mortgagor can be imputed to a mortgagee financial institution so as to permit a mortgage guaranty insurance company to rescind its policy guaranteeing the mortgage loan. Because there are no credibility issues to be decided at this stage, the *Nanty–Glo* rule is inapplicable.

Next, the U.R.A. claims that Verex never alleged that the mortgage guaranty insurance policy was not intended to be a final expression of the entire agreement of the parties. Furthermore, the U.R.A. contends that Verex never alleged that the term making First Federal responsible for Foster's alleged misrepresentation was omitted from the policy by fraud, accident, or mistake. The U.R.A. argues, therefore, that the parol evidence rule prohibits Verex from using parol evidence to add a term to the insurance policy.

Verex conversely contends that the fraud exception to the parol evidence rule specifically provides that parol evidence of fraudulent inducement to the contract may be introduced for purposes of rescinding the contract. Apart from the parol evidence rule, Verex argues that evidence of custom and practice is always a relevant consideration in determining the intent of the contracting parties. Verex claims that pursuant to the custom and practice in the mortgage insurance industry, it reasonably relied upon First Federal performing in-depth underwriting to verify the accuracy of the information contained in Foster's loan application.

■ It is well settled in this Commonwealth that in the absence of fraud, accident, or mistake, parol evidence as to preliminary negotiations or oral agreement is not admissible in evidence if it adds to, modifies, contradicts, or conflicts with the written agreement between the parties. *Servomation Mathias Pa., Inc. v. Lancashire Hall, Inc.*, 442 Pa. 602, 276 A.2d 547 (1971); *Nicolella v. Palmer*, 432 Pa. 502, 248 A.2d 20 (1968); *Keyser v. Margolis*, 422 Pa. 553, 223 A.2d 13 (1966). However, it is equally well settled that this general rule does

not apply where the agreement is ambiguous. In such a situation, parol evidence is admissible to explain the agreement and resolve ambiguities to ascertain the meaning of the parties. *Pavlich v. Ambrosia Coal Co.*, 441 Pa. 210, 273 A.2d 343 (1971); *In re Fessman's Estate*, 386 Pa. 447, 126 A.2d 676 (1956). In addition, we held in *Electric Reduction Co. v. Colonial Steel Co.*, 276 Pa. 181, 186, 120 A. 116, 118 (1923), that the parol evidence rule does not apply in its ordinary strictness where the existence of a custom or usage to explain the meaning of words in a writing is concerned. Where terms are used in a contract which are known and understood by a particular class of persons in a certain special or peculiar sense, evidence to that effect is admissible for the purpose of applying the instrument to its proper subject matter. *Id.*, 276 Pa. at 188, 120 A. at 118. Accord *Makransky et al. v. Weston, et al.*, 304 Pa. 383, 155 A. 741 (1931). In *Carter v. Edwin J. Schoettle Co.*, 390 Pa. 365, 134 A.2d 908 (1957), we held that where there is an integrated agreement, evidence of prior negotiations is inadmissible to show an intent at variance with the language of the written agreement, but extraneous evidence is admissible to show local usage which would give a particular meaning to the language. However, in the absence of an express provision to the contrary, custom or usage, once established, is considered a part of a contract and binding on the parties though not mentioned therein, the presumption being that they know of and contracted with reference to it. See *Gallizzi v. Scavo*, 406 Pa. 629, 179 A.2d 638 (1962); *Leslie v. Pennco, Inc.*, 323 Pa.Super. 23, 470 A.2d 110 (1983); *Fisher v. Congregation B'Nai Yitzhok*, 177 Pa.Super. 359, 110 A.2d 881 (1955).

■ It is uncontested that the mortgage guaranty insurance policy *sub judice* does not contain a provision which makes the lender responsible for the representations of the borrower. Nevertheless, the policy does contain a clause which informs the insured that the insurer relies upon the representations made in the application for insurance. The introduction to the Verex master policy reads as follows:

Verex Assurance, Ins., Madison Wisconsin (a stock Company called the company) agrees to pay ____ (Hereinafter called the Insured) in consideration of the premiums to be paid by the Insured as specified in the Certificated [sic], **and in reliance upon statements made in the Application submitted by the insured,** any loss sustained by reason of the default in payments by a borrower as hereinafter set forth, subject to the following conditions: [emphasis added]

The Application submitted by the insured may include the borrower's loan application. Accordingly, custom or usage evidence may be used to determine the intent of the parties when they contracted, and whether Verex reasonably relied upon First Federal's underwriting to verify the accuracy of the information contained in the borrower's loan application.

Because Verex properly pleaded and produced evidence of a custom in the trade, the trial court's grant of partial summary judgment was error given that there is a genuine issue as to a material fact which can only be resolved at trial.

The Order of the Superior Court is affirmed.

Jurisdiction relinquished.

LARSEN, J., did not participate in the decision of this case.

MONTEMURO, J., who was an appointed Justice of the Court at the time of argument, participated in the decision of this case in his capacity as a Senior Justice.