OPINION
{¶ 1} Defendant-appellant, Marmaxx Operating Corporation, appeals from a Mahoning County Common Pleas Court judgment granting summary judgment in favor of plaintiff-appellee, Century III Associates.
 {¶ 2} Appellant is a Delaware corporation that owns and operates T.J. Maxx stores. Appellee is a Pennsylvania general partnership that operates a mall located in West Mifflin, Pennsylvania. Appellant entered into a contract with appellee to lease retail space in the mall (the lease). The lease was entered into after negotiations between appellant's representatives and representatives of The Edward J. DeBartolo Corporation, which was the manager of the mall at that time. The lease ran from August 13, 1992 until January 31, 2003.
 {¶ 3} The lease includes a section regarding taxes. It specifies how appellant's share of the real estate taxes is to be computed. According to the lease, appellant's share of the real estate taxes is to be calculated by multiplying the total amount of the real estate taxes each year by a fraction. The fraction is determined in the following manner: the numerator is the floor area of the demised premises and the denominator is the total square feet of all building space leased in appellee's parcel. The lease further provides that the total square feet of all building space leased in appellee's parcel "shall be deemed to be not less than ninety-five percent (95%) of the total square feet of all building space leasable" in appellee's parcel.
 {¶ 4} The mall houses four department stores. Each of the department stores owns their building but leases the land their building sits on from appellee. These are known as "ground leases." The question in this case is whether the department stores' building space should be excluded from the denominator in the real estate tax formula. The answer to this question depends on whether the department store space is "leasable" under the terms of the lease. Appellant contends that the space is leasable, while appellee asserts that it is not.
 {¶ 5} Appellee filed a complaint against appellant in 1999, seeking a declaratory judgment upholding its method of calculating appellant's share of the real estate taxes. Specifically, appellee asked the trial court to declare that (1) the building space owned by the department stores is not "building space leased" within the meaning of the lease and is properly excluded from the denominator for calculation of real estate taxes, and (2) appellant is not entitled to a refund for any real estate taxes paid to appellee. Appellant requested, and the trial court granted, a stay of the lawsuit pending the resolution of a parallel suit in Massachusetts. The trial court lifted the stay in January 2001, when it learned that the Massachusetts case was dismissed on the grounds of forum non conveniens. Appellant then filed a counterclaim alleging that appellee breached the lease and that it was entitled to damages equal to the difference between what it actually paid appellee for real estate taxes and the amount it alleged it should have paid.
 {¶ 6} Appellant next filed a motion for summary judgment on count two and prayer one in count one of appellee's complaint. Appellee filed a motion for summary judgment on count one of its complaint and on appellant's counterclaims.
 {¶ 7} The matter was submitted to a magistrate. The magistrate found that appellee's evidence, consisting of three affidavits, was uncontroverted. The magistrate relied particularly on Woodrow Stone's affidavit in reaching his decision. Stone has been responsible for drafting and processing leases, including the one at issue, for over 25 years. The magistrate found that the department stores own their own buildings. He further found that the terms "leased" and "leasable" mean those areas leasable by appellee. Additionally, he found that the department stores pay their proportionate share of the total real estate taxes assessed against the land and buildings in the mall. Thus, the magistrate concluded that the building space owned by the department stores is not "building space leased" within the meaning of the lease and is properly excluded from the denominator for the calculation of the real estate taxes. He also concluded that appellant was not entitled to a refund for any taxes paid to appellee.
 {¶ 8} Appellant filed objections to the magistrate's decision. The trial court overruled appellant's objections and affirmed the magistrate's decision. It granted appellee judgment on count one of its complaint and dismissed appellant's counterclaims. Appellant filed a timely notice of appeal on September 3, 2004.
 {¶ 9} Appellant raises two assignments of error, the first of which states:
 {¶ 10} "THE TRIAL COURT ERRED WHEN, INSTEAD OF GRANTING MARMAXX'S MOTION FOR SUMMARY JUDGMENT, IT INTERPRETED THE CLEAR AND UNAMBIGUOUS LANGUAGE IN A FULLY INTEGRATED LEASE AGREEMENT BETWEEN MARMAXX AND CENTURY III IN A MANNER THAT SIGNIFICANTLY DEPARTS FROM THE LANGUAGE'S PLAIN AND ORDINARY MEANING; AND ITS HOLDING WAS CONTRARY TO LAW TO THE EXTENT THAT IT DEPENDED UPON INADMISSIBLE AND IRRELEVANT EXTRINSIC EVIDENCE, VIZ. THE AFFIDAVIT OF WOODROW STONE."
 {¶ 11} In reviewing an award of summary judgment, appellate courts must apply a de novo standard of review. Cole v. AmericanIndus. Resources Corp. (1998), 128 Ohio App.3d 546, 552,715 N.E.2d 1179. Thus, we shall apply the same test as the trial court in determining whether summary judgment was proper. Civ.R. 56(C) provides that the trial court shall render summary judgment if no genuine issue of material fact exists and when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. State ex rel. Parsonsv. Flemming (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377. A "material fact" depends on the substantive law of the claim being litigated. Hoyt, Inc. v. Gordon Assoc., Inc. (1995),104 Ohio App.3d 598, 603, 662 N.E.2d 1088, citing Anderson v. LibertyLobby, Inc. (1986), 477 U.S. 242, 247-248, 106 S.Ct. 2505,91 L.Ed.2d 202.
 {¶ 12} Appellant first argues that, in interpreting the lease, we must give the words their everyday, dictionary meaning. It contends that "leasable" simply means "capable of being leased." Therefore, appellant argues that the department store space is leasable under the terms of the lease. Appellant asserts that there is nothing in the lease that gives one any reason to think that "leasable" should be given any other definition. Appellant further contends that the department store space meets this definition of "leasable" because under the terms of the ground leases, the department stores are not prohibited from leasing their spaces. Furthermore, appellant contends that appellee is attempting to re-write the lease by interpreting "leasable" to mean "leasable only by it." Appellant argues that had appellee meant "leasable" to have such a meaning, it should have included language to that effect in the lease.
 {¶ 13} Next, appellant argues that to give "leasable" appellee's definition would lead to an absurd result. It points to an example as follows. If appellee reached an agreement with all of the other mall tenants to replace their ordinary leases with ground leases, under appellee's definition of "leasable" appellant would become responsible for 100 percent of the real estate taxes assessed on the mall. However, under the common definition of "leasable," appellant argues, it was able to calculate its maximum proportionate share of the real estate taxes before signing the lease.
 {¶ 14} Both parties agree that Pennsylvania substantive law governs this case under the Ohio choice of law principles. A lease is a contract. Thus, we will interpret it according to the principles of contract law. Hutchinson v. Sunbeam Coal Co.
(1986), 513 Pa. 192, 519 A.2d 385, 389. The goal of contract interpretation is to determine the parties' intent when they entered into the contract. Id.
 {¶ 15} Contract language is ambiguous if it is reasonably susceptible to more than one interpretation. Id. at 390. When no apparent ambiguity exists, courts should not "distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity." Madison Constr. Co. v. Harleysville Mut.Ins. Co. (1999), 557 Pa. 595, 735 A.2d 100, 106. When the contract words are unambiguous, the parties' intent should be found only in the express terms of the agreement. ShovelTransfer and Storage, Inc. v. Pennsylvania Liquor Control Bd.
(1999), 559 Pa. 56, 739 A.2d 133, 138. However, when contract language is ambiguous, courts may resort to extrinsic evidence to determine the meaning of the ambiguous language. Hutchinson,735 A.2d at 390.
 {¶ 16} Article IV of the lease is titled "Real Estate and Other Taxes." Section 1 provides in relevant part:
 {¶ 17} "Lessee's proportionate share [of the real estate taxes] shall be computed by multiplying the total amount of the real estate taxes each year by a fraction, the numerator of which shall be the Floor Area of the Demised Premises and the denominator of which shall be the total square feet of all building space leased in Lessor's Parcel as of the beginning of the calendar year in which such taxes are paid. * * * For the purposes of determining Lessee's proportionate share of real estate taxes, the total square feet of all building space leased in Lessor's Parcel shall be deemed to be not less than ninety-five percent (95%) of the total square feet of all building space leasable in Lessor's Parcel."
 {¶ 18} Appellant contends that we should give "leasable" its common, ordinary meaning. "Leasable" is the adjective form of "lease" meaning "to grant by lease" or "to hold under a lease." Merriam-Webster's Collegiate Dictionary (10 Ed. 1998) 663. In other words, the common definition of "leasable" is, as appellant puts forth, capable of being leased.
 {¶ 19} However, we cannot consider the term "leasable" in isolation. The entire contract must be taken into account when the meaning of an individual clause is at issue. Neal D. IveyCo. v. Franklin Assocs., Inc. (1952), 370 Pa. 225, 87 A.2d 236,239. We will not give an interpretation to one part of a contract that will annul another part of the contract. Id.
 {¶ 20} As appellee notes, the term "lessor," as used in the lease, refers only to it. (Lease, p. 1). Furthermore, the evidence is uncontroverted that the department stores own their buildings and lease only the ground from appellee. (Stone Aff., Exhs. E-H). Additionally, the lease is a contract only between appellee (lessor) and appellant (lessee). Thus, it is reasonable that "leasable" means capable of being leased by appellee since appellee is the only lessor and does not own the department store buildings.
 {¶ 21} Appellant further points this court's attention to Exhibit B of the lease. Exhibit B is a map of appellee's parcel and the surrounding area. The map includes a section under the heading "Statistical Data" that gives the total square footage of the building space that is "leasable" and the total square footage that is "non-leasable." Appellant argues that the map provides a clear definition of "leasable" by specifying the "leasable" square footage is 1,315,325 square feet. This amount, appellant states, includes the 741,062 square feet of department store space. Thus, because the lease provides a clear definition of "leasable," appellant asserts we must apply this definition throughout the lease.
 {¶ 22} Exhibit B to the lease provides a map for the purpose of describing a no-building area. The only reference to Exhibit B in the lease is in Article XI, which provides in part: "Lessor shall not, except as shown on Exhibit `B' attached hereto and made a part hereof, and except as hereinafter provided, authorize or permit in the area designated `No Build Area' on said Exhibit `B', (a) the erection or placement of any buildings * * * or (b) any [promotions, signs, etc.] * * * without Lessee's prior consent[.]" Thus, Exhibit B's purpose is strictly to provide a graphic illustration of the no-building areas.
 {¶ 23} Generally, a word used by the parties to a contract in one sense should be interpreted in the same sense throughout the contract in the absence of countervailing reasons. NorthernLiberties Gas Co. v. United Gas Imp. Co. (1944), 348 Pa. 433,35 A.2d 284, 287. Exhibit B was not meant to provide a definition of leasable space in the mall, but instead to simply provide a description of where appellee could and could not build on the premises. The lease includes a separate definitions section that does not include "leasable." This is reason to give "leasable" a different definition in the real estate tax provision of the lease than in Exhibit B. In the real estate tax provision, "leasable" is a very important term. But in Exhibit B, it is merely used to reference certain areas.
 {¶ 24} Appellant additionally asserts that the court should not have considered Stone's affidavit, which appellee submitted in support of its definition of "leasable." It contends that because the plain meaning of "leasable" was ascertainable from the lease, the court should not have considered the affidavit as it is parol evidence. Furthermore, it argues that Stone's definition of "leasable" is merely his opinion. And while Stone stated that his definition was one of custom and usage, appellant argues that Stone failed to provide any factual evidence that "leasable" has a particular custom or usage.
 {¶ 25} Generally, parol evidence is inadmissible to demonstrate the meaning of an unambiguous term. However, evidence regarding industry custom and usage can be admitted to explain the meaning of a term even when the agreement is not ambiguous.Resolution Trust Corp. v. Urban Redevelopment Auth. ofPittsburgh (1994), 536 Pa. 219, 638 A.2d 972, 975. Put another way, "[t]he parol evidence rule does not apply in its ordinary strictness where the existence of a custom or usage to explain the meaning of words in a writing is concerned." Id., citingElectric Reduction Co. v. Colonial Steel Co. (1923)276 Pa. 181, 120 A.116, 118. The Pennsylvania Supreme Court has even stated:
 {¶ 26} "In the law of contracts, custom in the industry or usage in the trade is always relevant and admissible in construing commercial contracts and does not depend on any obvious ambiguity in the words of the contract. If words have a special meaning or usage in a particular industry, then members of that industry are presumed to use the words in that special way, whatever the words mean in common usage and regardless of whether there appears to be any ambiguity in the words." SunbeamCorp. v. Liberty Mut. Ins. Co. (2001), 566 Pa. 494,781 A.2d 1189, 1193.
 {¶ 27} Additionally, when contract language is ambiguous, courts may resort to extrinsic evidence to determine the meaning of the ambiguous language. Hutchinson, 735 A.2d at 390.
 {¶ 28} Given this law, the trial court properly considered Stone's affidavit in determining the meaning of "leasable." The term is ambiguous. In fact, this entire lawsuit centers on its meaning. Furthermore, even if the term was not ambiguous, parol evidence was nonetheless admissible based on the custom and usage exception.
 {¶ 29} Stone stated the following in his affidavit concerning the definition of "leasable." Stone was the vice president of The DeBartolo Corporation at the time the lease was negotiated. He has been in charge of lease coordination, including the preparation and processing of all leases for space in the mall. Furthermore, for over 25 years he was responsible for drafting and processing all of the leases in the DeBartolo malls and now holds the same position with Simon Property Group. As to the lease at issue, Stone stated that appellee is the only party that can lease space in the mall. Furthermore, as used in the lease, the term "leased" means the space for which appellee has signed leases. The term "leasable" means the space within the mall that appellee has the capacity to lease, but which may not have leased at a particular time. The department stores' space cannot be considered leasable because appellee does not own the department stores and, therefore, cannot lease that space.
 {¶ 30} Stone's affidavit supports appellee's definition of "leasable." And appellant did not submit any evidence to contradict the custom and usage for the term.
 {¶ 31} Furthermore, we should note appellee submitted the affidavit of David Carson, the director of lease accounting for the Simon Property Group. In his affidavit, Carson described the procedure used in calculating appellant's share of the real estate taxes. He stated that first appellee takes the total real estate taxes assessed against the entire shopping mall and deducts the payments received from the department stores. The net real estate tax is then multiplied by the fraction set out above where the numerator is the floor area of the leased store and the denominator is the total square feet of leasable space. Thus, the department stores pay their proportionate share of the total tax bill assessed against the mall.
 {¶ 32} Based on the above, the trial court properly determined that appellee's definition of "leasable" was correct and properly granted summary judgment in favor of appellee. Thus, appellant's first assignment of error is without merit.
 {¶ 33} Appellant's second assignment of error states:
 {¶ 34} "THE TRIAL COURT ERRED IN NOT GRANTING MARMAXX'S RULE 56(F) REQUEST FOR AN OPPORTUNITY TO TAKE DISCOVERY RELATIVE TO THE ISSUES RAISED IN THE AFFIDAVITS THAT CENTURY III SUBMITTED IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT."
 {¶ 35} Appellant argues that if this court agrees with appellee's definition of "leasable," we should still reverse this case and remand it to the trial court so that it can proceed with the discovery it requested pursuant to Civ.R. 56(F). Appellant alleges that given the three-year stay in this case, due to a similar case between the parties in Massachusetts, it did not have time to conduct discovery. Appellant claims that if it had access to the department store ground leases, it could likely show that the department stores had the authority to lease their building spaces. Thus, it could contradict Stone's affidavit. Appellant also claims that it should be given the opportunity to depose Stone and other witnesses whose affidavits appeared for the first time in appellee's motion for cross-summary judgment. And appellant claims that neither the magistrate nor the trial court even addressed its Civ.R. 56(F) motion.
 {¶ 36} The decision as to whether to allow additional time to permit a party opposing summary judgment to conduct discovery is within the trial court's sound discretion. Kristian v.Youngstown Orthopedic Assoc., 7th Dist. No. 03-MA-189,2004-Ohio-7064, at ¶ 18. Thus, we will not reverse the trial court's decision absent an abuse of its discretion. Abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 37} Civ.R. 56(F) provides:
 {¶ 38} "Should it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just."
 {¶ 39} Appellant did not file a separate motion asking for additional time for discovery pursuant to Civ.R. 56(F). Instead, it made this request within its brief in opposition to summary judgment. Appellant requested that if the court was inclined to grant appellee's motion for summary judgment, it should at least defer ruling on the motion until it had a chance to investigate the evidence appellee put forth in its affidavits. In support, appellant attached Douglas Meal's affidavit. Meal is one of the attorneys representing appellant. He stated in his affidavit that the complete documents on which appellee relied, namely the ground leases, are within appellee's sole control and appellant could not test the validity of the statements appellee made regarding the ground leases without discovery of the entire documents and the circumstances surrounding their preparation. He further stated that appellant could not test the validity of the statements made in appellee's affidavits without deposing the men who gave their affidavits.
 {¶ 40} Appellant did not outright ask the trial court to grant its motion. It only asked for additional time for discoveryif the court decided to grant appellee's summary judgment motion. Thus, it only thought discovery was necessary if it was not going to prevail.
 {¶ 41} Furthermore, appellant is the party who filed its motion for summary judgment just days after the pleadings were entered and before either party had a chance to conduct discovery. If appellant believed discovery was necessary, it should not have asked for summary judgment so early in the proceedings.
 {¶ 42} Additionally, appellee attached copies of parts of the ground leases to its complaint. If appellant thought copies of the entire ground leases were pertinent, it could have easily requested them from appellee before filing its summary judgment motion.
 {¶ 43} Based on the history of this case, we cannot conclude that the trial court abused its discretion in denying appellant's Civ.R. 56(F) motion. Accordingly, appellant's second assignment of error is without merit.
 {¶ 44} Although raised only in a footnote, appellant makes one other argument that we will address briefly. Appellant contends that if this court does not agree that the trial court's judgment should be reversed for the reasons set out in its assignments of error, we should still reverse the summary judgment on count two of its counterclaim. Count two alleged that if the department store space is excluded from the denominator for the calculation of real estate taxes, then the portion of the taxes attributable to the department stores must likewise be excluded from the multiplicand of the Article IV formula that determines appellant's proportionate share of the taxes assessed on the mall. Appellant claims that it made this argument in the trial court, but neither the magistrate nor the court addressed it. It contends that we must remand this case for consideration of count two.
 {¶ 45} Appellant is incorrect in its assertion that the magistrate and trial court failed to rule on count two. Both the magistrate and the trial court determined that the dismissal of appellant's counterclaims, including count two, was appropriate. The trial court also specifically noted that the magistrate found that in calculating appellant's proportionate share of the real estate taxes, appellee first deducted the contribution received from the department stores from the total taxes. Furthermore, the magistrate's decision states that the Carson affidavit specifically provided that appellee has excluded contributions made by the department stores from the total taxes when calculating appellant's share of the taxes. He also found that appellant failed to provide any evidence to the contrary. Thus, there is no need to remand this case for the trial court to rule on count two of appellant's counterclaim, as appellant alleges, since both the magistrate and trial court already ruled on it.
 {¶ 46} For the reasons stated above, the trial court's decision is hereby affirmed.
Waite, J., concurs.
DeGenaro, J., concurs.