487 A.2d 820

**TECHALLOY COMPANY, INC., Appellant,**

v.

**RELIANCE INSURANCE COMPANY and Planet Insurance Company.**

Superior Court of Pennsylvania.

Argued May 8, 1984.

Filed Dec. 28, 1984.

Reargument Denied Feb. 21, 1985.

2

4

William J. Lehane, Philadelphia, for appellant.

Jan E. DuBois, Philadelphia, for appellees.

Before WICKERSHAM, WIEAND and LIPEZ, JJ.

LIPEZ, Judge:

This is an appeal from the Order of the Court of Common Pleas of Montgomery County, granting the preliminary objections of the defendants/appellees, Reliance Insurance Company and Planet Insurance Company (hereinafter "Reliance"), and dismissing the complaint of plaintiff/appellant, Techalloy Company, Inc., (hereinafter "Techalloy") for failure to state a cause of action.

## I.

The facts underlying Techalloy's complaint developed as follows: On May 20, 1981, James Peterman filed a class action suit against Techalloy, a corporation engaged in the business of cutting and stripping steel, alleging Techalloy had recklessly dumped or stored trichloroetheline (TCE), a chemical used by Techalloy in that process. Peterman claimed that exposure to, contact with or ingestion of TCE, a hazardous and toxic chemical, may have caused serious injury, including neurological, pulmonary, hepatic and renal damage with possible mutagenic, teratogenic and carcinogenic results. In addition, Peterman alleged that as a result of Techalloy's negligence, the plaintiff class suffered an increased risk of serious illness or death due to actual ingestion and/or use of contaminated water and suffered from high anxiety because of the awareness of this risk. Peterman sought the creation of a trust fund for the payment of present and future medical expenses, as well as compensatory damages.

Relying on the comprehensive general liability policy which Techalloy had procured from Reliance in 1976, Techalloy submitted to its insurance carrier a copy of the Peterman complaint, requesting that Reliance defend Techalloy in accordance with the terms of the policy. Reliance denied coverage on the ground that the complaint alleged neither property damage nor bodily injury, and also incorporated by reference a letter sent to Techalloy more than a year earlier which set forth additional reasons for the denial. Consequently, Techalloy employed private counsel who successfully defended that suit, and then initiated the action preceding this appeal seeking as damages the expenses incurred in the Peterman defense plus costs of the present appeal.

Before trial, Reliance filed preliminary objections in the nature of a demurrer to Techalloy's complaint maintaining that there was no duty to defend Techalloy in the Peterman action because the Peterman complaint did not specifically allege present bodily injury in conformance with the policy

definition of personal injury. Reliance also invoked a policy exclusion which was first brought to Techalloy's attention in a letter dated April 28, 1980, and which informed Techalloy that the water contamination caused by the TCE was not sudden and accidental and therefore would not be covered by that particular policy. In support of its argument, Reliance referred to several allegations in the Peterman complaint which described in detail the nature of the damages incurred and the circumstances surrounding the chemical discharge.

The court below granted Reliance's preliminary objections and dismissed Techalloy's complaint on the premise that the insurer had no duty to defend the action when the underlying complaint did not allege actual personal injury. The court did not address the issue of the policy exclusion. It is upon that basis, however, which we affirm the decision of the trial court. We disagree with the opinion of the court below that the Peterman complaint failed to allege personal injury within the boundaries of an insurance policy. Because the personal injury issue before us is one of first impression for our courts, we discuss both that and the policy exclusion in this opinion.

## II.

The procedural disposition of this case binds us to a stringent standard of review. If the facts pleaded in the complaint, together with all inferences reasonably deducible therefrom, are sufficient to support a finding that a claim for personal injury was made, no matter how tenuous, we should refuse to sustain the demurrer on that basis. *Gray v. Gray*, 275 Pa.Super. 131, 134, 418 A.2d 646, 648 (1980); *Girard Trust Bank v. Life Ins. Co. of North America*, 243 Pa.Super. 152, 157, 364 A.2d 495, 498 (1976) (allocatur refused). We are also mindful of the special context in which insurance contracts are scrutinized and remain careful in this case to assess the facts in view of the general principles of insurance law which apply.

▆▆▆ Words of an insurance policy which are unambiguously written should be construed according to their plain and ordinary meaning, *Pennsylvania Manufacturers' Ins. Co. v. Aetna Casualty and Surety Ins. Co.,* 426 Pa. 453, 457, 233 A.2d 548, 551 (1967), and we should give effect to that language. *Standard Venetian Blind Co. v. American Empire Ins. Co.,* 503 Pa. 300, 305, 469 A.2d 563, 566 (1983). If, however, a term is susceptible to two interpretations or subject to reasonable question, it should be liberally construed in favor of the insured. *C. Raymond Davis & Sons, Inc. v. Liberty Mutual Ins. Co.,* 467 F.Supp. 17, 20 (E.D.Pa.1979); *Hofing GMC Truck, Inc. v. Kay Wheel Sales Co., Inc.,* 543 F.Supp. 414, 419 (E.D.Pa.1982). Most importantly, in close or doubtful cases, we should find coverage for the insured, and if we err in interpreting a policy provision, we should err in favor of the insured. *Motley v. State Farm Mutual Automobile Ins. Co., Inc.,* 502 Pa. 335, 340, 466 A.2d 609, 611 (1983).

A.  Interpretation of "Personal Injury"

▆▆▆ Because words which are unambiguous in one context may become susceptible to more than one interpretation when applied to a particular set of facts, it is incumbent upon the insurance company, as draftor of the policy, to delineate as precisely as possible the full extent of coverage or bear the consequences for failing to do so. *Collister v. Nationwide Ins. Co.,* 479 Pa. 579, 388 A.2d 1346 (1978) *cert. denied,* 439 U.S. 1089, 99 S.Ct. 871, 59 L.Ed.2d 55 (1979). Precise definition is particularly important in cases in which an insured purchases a comprehensive general liability policy to protect a business which entails the use of potentially harmful substances possessing debilitating qualities of unknown parameters. In that instance, the insurance company providing coverage should take extra care to assure that the policy leaves no room for question, at peril of being forced to pay for greater coverage than anticipated. *Delaware County Construction Co. v. Safeguard Ins. Co.,* 209 Pa.Super. 502, 509, 228 A.2d 15, 18 (1967).

8

■ While an insurer is not required to defend an insured against every claim, it is firmly established that an insurer must defend any suit in which from the face of the complaint there exists actual or *potential* coverage. *Gedeon v. State Farm Mutual Automobile Ins. Co.*, 410 Pa. 55, 58, 188 A.2d 320, 321–22 (1963). The dispute here encountered is whether the allegations set forth in the Peterman complaint sufficiently raise claims of personal injury to fall within the meaning of the policy. It is at this juncture that we disagree with the decision of the lower court and agree with Techalloy.

Given the particular considerations which obtain to insurance contracts, we believe the only fair conclusion to be that Peterman alleged personal injury. Even if the allegations were not of sufficient particularity to be cognizable and compensable under Pennsylvania tort law, they were sufficient at least in the context of the contractual obligation of "bodily injury, sickness or disease" as defined in the policy. While "personal injury" may be most traditionally construed as a physical injury overtly manifested, that is not its exclusive construction. Furthermore, it is hardly speculative to say that Techalloy reasonably expected, by purchasing the policy, to be insured against financial obligations stemming from charges such as those raised by Peterman. Unfortunately, the only construction of the policy which is consonant with that objective is the one which the lower court denied.

■ In the original Peterman action, the trial judge held for Techalloy on the basis that "[e]ven if plaintiff's allegation at paragraph 4 of his complaint that he *may* possibly have sustained some injury is read to allege that he *may* have a present injury, such a claim is palpably insufficient to meet the requirement of present injury." (emphasis in original). As we understand this, Peterman alleged insufficient present injury upon which to sustain his cause of action. This assessment is proper when the cause of action alleged is negligence. It should not be the standard, however, for determining the rights and duties of parties to an

insurance contract. Such a strict construction of personal injury would result in the insured's being denied coverage when he would most reasonably expect it and would defeat in total the purpose of the policy. It also would equate the duty to defend with the duty to indemnify, which is contrary to the law in cases such as the present in which the insurer contracted to defend even "groundless, false or fraudulent" accusations. *See Gedeon,* 410 Pa. at 58, 188 A.2d at 321–22, (The obligation to defend arises whenever the complaint may *potentially* come within coverage of the policy, even if the actual outcome requires no indemnification.); *C. Raymond Davis & Sons, Inc.,* 467 F.Supp. at 19, (An insurer must defend its insured if there is *potential* coverage because the duty to defend is broader than the duty to indemnify.).

■ It is apparent that the policy before us is thus susceptible to the following two interpretations: (1) personal injury means physical injury caused by external violence, as advanced by Reliance; and (2) at a minimum, personal injury encompasses allegations of exposure to a hazardous substance, increased risk of injury, anxiety, various internal disorders and tissue damage, as advanced by Techalloy. This compels us to liberally construe the term in Techalloy's favor. In this manner we will not defeat, without a clear necessity, the claim to coverage which was Techalloy's objective in securing the policy. *Koser v. American Casualty Co.,* 162 Pa.Super. 63, 64, 56 A.2d 301 (1948) (allocatur refused).

For their persuasive reasoning and instructive value, we draw analogy to a series of cases which evolved from the discovery of diseases associated with asbestos products. A common issue, for purposes of determining which insurance company was on risk, was when did the injury occur when exposure to the hazardous element did not result in immediate manifestation of the disease.

In the case of *Keene Corp. v. Insurance Co. of North America,* 667 F.2d 1034 (D.C.Cir.1981), *cert. denied,* 455 U.S. 1107, 102 S.Ct. 1644, 71 L.Ed.2d 875 (1982), *reh'g*

*denied,* 456 U.S. 951, 102 S.Ct. 2024, 72 L.Ed.2d 476 (1982), the court had to determine the extent to which each of a number of insurance companies was liable when Keene, a manufacturer of products containing asbestos, was named as a co-defendant in litigation involving manufacturer's liability for asbestos-related diseases. Controversy arose because each company had issued a comprehensive general liability policy to Keene but at varying times. The key to determining which company was liable lie in the court's ability to ascertain when the injury complained of occurred: when the plaintiffs were first exposed to the asbestos or when the disease later became physically manifest.

The court acknowledged that in the particular circumstances surrounding the suit, each insurance company had failed to "develop policy language that would directly address the full complexity entailed by asbestos-related diseases." *Id.,* at 1041. Giving due consideration to insurance concepts, the *Keene* court held that for purposes of insurance coverage, each insurer with a policy in effect from the time the plaintiffs were initially exposed to the asbestos until their diseases became physically manifest would be liable to Keene for indemnity and defense costs. Stated plainly, injury occurred, *for insurance purposes,* at the time of the exposure to the hazard causing substance. The court deduced that it would be inconsistent with the objective of insurance protection to hold that there was no coverage when the injurious process began if there clearly would be coverage had the diseases become apparent spontaneously upon inhalation. Consequently, any part of the injurious process was sufficient to constitute bodily injury in accordance with the policies.[1]

1. For similar case discussion, *see Insurance Co. of North America v. Forty-Eight Insulations, Inc.,* 633 F.2d 1212 (6th Cir.1980), *cert. denied,* 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650 (1982), *reh'g denied,* 455 U.S. 1009, 102 S.Ct. 1648, 71 L.Ed.2d 878 (1982), and *Porter v. American Optical Corp.,* 641 F.2d 1128 (5th Cir.1981), *cert. denied,* 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650 (1981), *reh'g denied,* 455 U.S. 1009, 102 S.Ct. 1649, 71 L.Ed.2d 878 (1982).

The better reasoned approach in the case before us dictates that from the perspective of Peterman's allegations, Reliance erroneously constricted the purview of personal injury. The insurer's denunciation of the "exposure" theory" as "completely irrelevant and inapplicable" is misguided. Reliance distinguishes the asbestos cases on the ground that in those suits plaintiffs at time of trial had already developed asbestosis and other asbestos-related illnesses. This distinction is inapposite. The relevance attaches insofar as in both the asbestos cases and the case at bar, the courts had to determine if and when an insurance company would be liable when the manifestation of a disease was not simultaneous with its inception. Although exposure may not be a new theory of tort liability as espoused by Techalloy, it is relevant for our purposes of deciding whether the Peterman complaint alleged an injury within the meaning of Techalloy's insurance coverage.

■ Our decision here should be read only in the context of the insurance interpretation in which it is made. It should not be understood that we are assuming that any member of the plaintiff class will at any time in the future suffer that type of physical manifestation which would afford compensation under the law. Rather, we hold that the term personal injury, modified only by the standard insurance industry definition of "bodily injury, sickness or disease," is ambiguous as applied to the potentially progressive physical ailments alleged by Peterman. As was recognized in a predecessor to *Keene*, there is a "clear distinction between when bodily injury occurs and when the bodily injury which has occurred becomes compensable." *Forty-Eight Insulations*, 633 F.2d at 1223. Since the Peterman complaint alleged exposure to, ingestion and use of water contaminated with a highly-dangerous chemical capable of causing severe physical damage, there were sufficient allegations of personal injury to render the complaint at least potentially within the policy's coverage.[2]

2.  *See also Palace Laundry Co. v. Hartford Accident and Indemnity Co.,* 27 Conn.Supp. 222, 234 A.2d 640 (1967) (holding gossamer thin allega-

Reliance could have easily tailored the language in its otherwise standard policy so that it would more accurately reflect the coverage it intended to provide. Given the nature of Techalloy' business, this should have been one of Reliance's more apparent concerns. Precision in delineating the confines of personal injury would have eliminated all ambiguity and would have alerted Techalloy to the restrictions so that the insured could have procured adequate coverage elsewhere.

B. Effect of the policy exclusion

▓ We apply the same principles of construction stated earlier in assessing the viability of Reliance's claim to the policy exclusion as a alternative basis for denial of coverage. In pertinent part, the Reliance policy excluded from coverage "personal injury or property damage arising out of the discharge ... release or escape of ... toxic chemicals ... or ... waste materials or other irritants, contaminants or pollutants into ... any water course or body of water," unless such discharge was "sudden and accidental." While we were compelled to interpret the meaning of a term whose application was ambiguous, if the language of a policy is clear and unambiguous, we must apply its plain and ordinary meaning, and not struggle to create ambiguity solely for the purpose of finding coverage where none exists. *Monti v. Rockwood Ins. Co.*, 303 Pa.Super. 473, 476, 450 A.2d 24, 25 (1982). This is true even though exceptions to coverage are generally construed against the insurer. *Miller v. Prudential Ins. Co. of America*, 239 Pa.Super. 467, 472, 362 A.2d 1017, 1020 (1976).

Although direction from the record is not overwhelming, Techalloy addresses the issue of the exclusion in a footnote found in its statement of the case. Citing *C.H. Heist Corp. v. American Home Assurance Co.*, 640 F.2d 479 (3d Cir. 1981), Techalloy contends that before Reliance could invoke the exclusion, it must know to a certainty that those facts alleged by Peterman could in no event support a finding

tion of accidental bodily injury sufficient for purpose of engaging insurance company's duty to defend).

that the alleged contamination was sudden and accidental. Thus, Reliance's success at this point would be premature because the suit never developed further than the preliminary objection stage.

We do not agree that the pre-trial disposition of this case conclusively establishes insufficient factual development to the extent that it would preclude us from reviewing Reliance's claim. Indeed, notwithstanding the early disposal of Techalloy's complaint, we are able to conclude to our satisfaction, from those facts on record and all reasonable inferences deducible therefrom, that Reliance's implementation of the exclusion is valid. At best, Techalloy could prove that the discharge was accidental. That alone, however, would not substantiate their position since the language of the policy unambiguously states that there will be no coverage for toxic discharge into the environment unless that discharge is both sudden *and* accidental. Turning to the allegations in the Peterman complaint, it is immediately apparent that Peterman did not allege a sudden event. In contrast, the allegations were directly the opposite, identifying the source of the problem as contamination which occurred on a "regular or sporadic basis from time to time during the past 25 years."

We find Techalloy's response to be weakened in two other respects. First, a careful reading of *Heist* and application of its analysis to the facts at bar does not leave us with the same impression as it did Techalloy. Second, the record reveals facts known to both parties as early as 1980 that support Reliance's position to the degree of certainty which Techalloy claims is required.

In *Heist,* Heist Corp., the insured, sought a declaratory judgment against American, its insurer, for a determination of its rights under a policy after American refused to defend or cover Heist who was impleaded in a personal injury action. One basis for American's refusal was that the policy excluded coverage for injuries resulting from the non-accidental discharge of toxic substances. The district court granted a summary judgment for Heist which re-

quired American to "cover" the third party action. American appealed, maintaining in part that "covering" the action in effect forced American to actually indemnify Heist though subsequent developments of the case may have proved that the exclusion did in fact apply. In accord, the court of appeals vacated that part of the lower court's order, allowing American the opportunity to factually develop the applicability of the exclusion since "[a]ctual indemnification depend[ed] upon the existence or nonexistence of facts not yet established." *Heist*, 640 F.2d at 483.

A fatal difference between *Heist* and the case at bar is that in *Heist*, the complaint underlying the insurance dispute did not describe in detail the circumstances surrounding the incident. That lack of detail precluded the appeals court from considering the applicability of the exclusion. Instead, the court could only infer from the facts available that the complaint was potentially within the policy, thus the insurer was under the duty to defend its insured pending an actual establishment of facts by the insurer to support its claim to the exclusion.

Thus, while a factual evaluation of the exclusion was premature at the summary judgment stage in *Heist*, that is not a blanket determination which blindly applies with equal import in every situation. On the contrary, any similarity to *Heist* ends once we proceed past its procedural disposition since we are not faced with such unknown or unascertainable facts in the case at bar. The record below categorically provides sufficient factual allegations to support a finding of a non-sudden occurrence within the plain meaning of the exclusion. In addition to alleging a regular or sporadic discharge over a period of 25 years, the Peterman complaint also maintained that in May of 1979, Techalloy informed the community in which Peterman resided that their well water contained a dangerous level of TCE. Techalloy had also been aware since April 28, 1980, that Reliance investigated the supposed pollution and from that date disclaimed any coverage for the discharge under the terms of the exclusion. Techalloy would have us judicially

interpret a provision whose meaning here is unequivocal. Further, Techalloy offers no alternative interpretation of "sudden and accidental" which would render it ambiguous and capable of our interpretation.

We conclude, therefore, that although the allegations of personal injury in the Peterman complaint state a claim to which coverage potentially applies, we find that Reliance was not under a duty to defend Techalloy in the Peterman action because of the existence of the exclusion. The allegations disclosing the circumstances and nature of the chemical discharge explicitly negate any potential for finding a sudden event in order to render the exclusion inapplicable. Furthermore, despite the early dismissal of Techalloy's complaint, there are sufficient facts on record to support a determination that the water contamination did not occur suddenly. The facts of this case afford us a sufficient basis upon which to affirm the demurrer.

Order affirmed.