781 A.2d 1189

SUNBEAM CORPORATION, Montey Corporation, Temrac Company, Inc., Sunbeam Products, Inc., Chemetron Investments, Inc., Allegheny International Canada, Ltd., Eliskim, Inc., and Woodshaft, Inc., Corporations, Appellants

v.

LIBERTY MUTUAL INSURANCE COMPANY, First State Insurance Company, Lexington Insurance Company, and Pennsylvania Manufacturers Association Insurance Company, Corporations, Appellees.

Supreme Court of Pennsylvania.

Argued March 5, 2001.

Decided Oct. 19, 2001.

Reargument Denied Dec. 5, 2001.

496

Mark A. Grace, Andrew M. Roman, Richard A. Ejzak, Pittsburgh, David F. Binder, Philadelphia, Arthur G. Raynes, Wynnewood, for appellants, Sunbeam Corp. et al.

Michael David Bedrin, Wilkes Barre, Justina M. Wasicek, Harrisburg, for appellant amicus curiae, Dept. of Environmental Protection.

John Alexander MacDonald, Philadelphia, Paul W. Kissinger, Washington, DC, for appellant amicus curiae, United Policyholders.

Kevin J. Bruno, Newark, NJ, for appellant amicus curiae, Safety Light Corp.

Joseph W. Montgomery, Williamsburg, VA, for appellant amicus curiae, Air Products and Chemicals, Inc.

Justin Kellogg Miller, Peter Frank Marvin, Philadelphia, for appellant amicus curiae, Buckley & Co., Inc.

Lee Marc Epstein, Linda J. Karpel, Philadelphia, for appellant amicus curiae, Betzdearborn, Inc.

John Norig Ellison, Timothy Patrick Law, Philadelphia, for appellant amici curiae, Waste Management, et al.

Lawrence A. Demase, Pittsburgh, for appellant amicus curiae, Dravo Corp.

Thomas More Reiter, Valley Forge, Peter J. Kalis, Pittsburgh, for appellant amici curiae, Aluminum Co. of America, Inc., et al.

Thomas Brennan O'Brien, Joseph Barnett Silverstein, Joseph G. Manta, Philadelphia, for appellee, Liberty Mut. Ins. Co.

Larry A. Silverman, Pittsburgh, Michael J. Cohen, Washington, DC, for appellee Pennsylvania Manufacturers Ass'n.

Steven G. Adams, Joseph Gerard Derespino, Philadelphia, for appellee, First State Ins. Co.

Bernard D. Marcus, Pittsburgh, James P. Davenport, Washington, DC, John M. Burkoff, Pittsburgh, for appellee amici curiae, Underwriters At Lloyd's London and London Market Companies.

Michael Scott Olsan, West Lake Village, CA, Laura A. Foggan, Marilyn Kerst, Washington, DC, Guy A. Cellucci, Philadelphia, Sandra Tvarian Stevens, Washington, DC, for appellee amici curiae, Ins. Environmental Litigation Ass'n and the Alliance of American Insurers.

Jay B. Spievack, Stephen L. Ashcher, New York City, Kevin T. Fogerty, Allentown, for appellee amicus curiae, Tp. of Whitehall.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE and SAYLOR, JJ.

### OPINION OF THE COURT

FLAHERTY, Chief Justice.

Appellant manufacturing corporations are insured by appellee insurance companies under comprehensive general liability policies. At issue is the insurers' obligation to indemnify the manufacturers for the costs of cleaning up environmental pollution caused by the manufacturers. The insurance policies cover pollution if it was "sudden and accidental," but not otherwise. The manufacturers maintain that according to the usage in the industry, those words mean "unexpected and unintended." The trial court and Superior Court disagreed, holding that the common meaning of the words "sudden and accidental" is unambiguous and does not cover pollution which occurred gradually over a long period of time whether or not the pollution was unexpected and unintended. The trial court

therefore granted the insurers' demurrer and dismissed the complaint with prejudice. Superior Court affirmed.

■ Appellants have a second claim. They argue that according to principles of regulatory estoppel, a form of judicial estoppel, summary judgment was inappropriate. Their complaint alleged that in 1970 the insurance industry, including the defendant insurers, submitted to the Pennsylvania insurance department a memorandum which asserted that the disputed language—excluding coverage for pollution unless it was "sudden and accidental"—would not result in any significant decrease in coverage. The complaint alleged, moreover, that the insurance department relied on the industry's representation when it approved the disputed language for inclusion in standard comprehensive general liability policies without a reduction in premiums to balance a reduction in coverage. The trial court rejected this claim, stating that "Sunbeam could not reasonably establish that the Department relied on the explanatory memorandum submitted to it by the insurance industry." While the Superior Court majority affirmed this holding, President Judge McEwen dissented on the grounds that in reviewing the dismissal of a complaint based on preliminary objections in the nature of a demurrer, the averments of the complaint must be taken as true. A preliminary objection in the nature of a demurrer should be sustained only in a case that clearly and without a doubt fails to state a claim upon which relief may be granted. The dissenting opinion stated that likelihood of proof is irrelevant; a preliminary objection in the nature of a demurrer must be rejected if the facts as pleaded state a claim for which relief may be granted under any theory of law, citing *Willet v. Pennsylvania Medical Catastrophe Loss Fund*, 549 Pa. 613, 702 A.2d 850, 853 (1997).

■ This dissenting view is correct. Whether or not the court regarded proof of the insurance department's reliance on the insurance industry's memorandum as likely or probable, the fact remains that the reliance was properly pleaded. In evaluating a preliminary objection in the nature of a

demurrer, properly pleaded facts are deemed to be admitted. *County of Allegheny v. Commonwealth,* 507 Pa. 360, 490 A.2d 402, 408 (1985).

■■■ Furthermore, even without pleading or proving reliance by the insurance department, the allegation of estoppel should not have been dismissed. Judicial estoppel is an equitable, judicially-created doctrine designed to protect the integrity of the courts by preventing litigants from "playing fast and loose" with the judicial system by adopting whatever position suits the moment. *Gross v. City of Pittsburgh,* 686 A.2d 864, 867 (Pa.Cmwlth.1996). Unlike collateral estoppel or res judicata, it does not depend on relationships between parties, but rather on the relationship of one party to one or more tribunals. In essence, the doctrine prohibits parties from switching legal positions to suit their own ends. *Id.* Thus, having represented to the insurance department, a regulatory agency, that the new language in the 1970 policies—"sudden and accidental"—did not involve a significant decrease in coverage from the prior language, the insurance industry will not be heard to assert the opposite position when claims are made by the insured policyholders. The United States Court of Appeals for the Third Circuit recently reached the same conclusion in *Essex Chemical Corp. v. Hartford Accident and Indemnity Co.,* No. 00–1839 (March 7, 2001, unreported memorandum opinion) (following New Jersey Supreme Court's application of the doctrine of regulatory estoppel based on insurance industry's identical representations made to New Jersey's insurance commission).

Accordingly, it was error to dismiss the complaint without applying the doctrine of regulatory estoppel and the case will therefore be remanded for further proceedings in the trial court.

■■■ Appellants also claim that custom in the industry or usage in the trade supports the argument that the words "sudden and accidental" mean something in the insurance industry which is different from the common meaning of the terms. They argue that invocation of specialized usage in the

trade does not depend on any overt ambiguity in the language but, instead, such usage is always admissible to interpret commercial contracts.

■■ In the law of contracts, custom in the industry or usage in the trade is always relevant and admissible in construing commercial contracts and does not depend on any obvious ambiguity in the words of the contract. If words have a special meaning or usage in a particular industry, then members of that industry are presumed to use the words in that special way, whatever the words mean in common usage and regardless of whether there appears to be any ambiguity in the words.

[T]he parol evidence rule does not apply in its ordinary strictness where the existence of a custom or usage to explain the meaning of words in a writing is concerned. Where terms are used in a contract which are known and understood by a particular class of persons in a certain special or peculiar sense, evidence to that effect is admissible for the purpose of applying the instrument to its proper subject matter.... [I]n the absence of an express provision to the contrary, custom or usage, once established, is considered a part of a contract and binding on the parties though not mentioned therein, the presumption being that they knew of and contracted with reference to it.

*Resolution Trust Corp. v. Urban Redevelopment Auth'y*, 536 Pa. 219, 638 A.2d 972, 975–76 (1994). This is consistent with the Restatement (Second) of Contracts § 202(5), rules in aid of construction, which states: "Wherever reasonable, the manifestations of intention of the parties to a promise or agreement are interpreted as consistent with each other and with any relevant course of performance, course of dealing, or usage of trade." Comment d to Restatement (Second) of Contracts § 220 is apropos:

There is no requirement that an ambiguity be shown before usage can be shown, and no prohibition against showing that language or conduct have a different meaning in the light of usage from the meaning they might have apart from the

usage. The normal effect of a usage on a written contract is to vary its meaning from the meaning it would otherwise have.

Appellants allege that the words "sudden and accidental" have a peculiar usage in the insurance industry, whether or not the words appear to be ambiguous, that is different from the common usage of the terms. Appellants claim that "sudden and accidental" means "unexpected and unintended" in this insurance context and that the element of abruptness and brevity which the words ordinarily connote is absent.

The trial court, evaluating this claim, was bound by Superior Court precedent in *Lower Paxon Twp. v. U.S. Fidelity & Guaranty Co.*, 383 Pa.Super. 558, 557 A.2d 393, 397 (1989), which held "the plain meaning of [the phrase 'sudden and accidental'] requires that damages resulting from gradual releases of pollution are excluded from coverage."

> *Techalloy [Co. v. Reliance Ins. Co.*, 338 Pa.Super. 1, 487 A.2d 820 (1984), *alloc. denied* (Pa. Oct. 31, 1985)] established that the pollution exclusion is not ambiguous and must be accorded its plain meaning. That meaning is simply that damages resulting from a pollution discharge are covered only if the discharge itself is both sudden, meaning abrupt and lasting only a short time, and accidental, meaning unexpected.
>
> . . . .
>
> We believe the everyday meaning of the term "sudden" is exactly what this clause means. We do not believe that [it] is possible to define "sudden" without reference to a temporal element that joins together conceptually the immediate and the unexpected. [quoting *U.S. Fidelity & Guaranty Co. v. Star Fire Coals, Inc.*, 856 F.2d 31, 34 (6th Cir.1988).]
>
> . . . .
>
> Any other interpretation of the policy is blatantly unreasonable. To read "sudden and accidental" to mean only unexpected and unintended is to rewrite the policy by excluding one important pollution coverage requirement—abruptness of the pollution discharge. The very use of the

words "sudden *and* accidental" (emphasis added) reveal[s] a clear intent to define the words differently, stating two separate requirements.... [T]he word ... "sudden" ... adds an additional element.... This additional element is the temporal meaning of sudden, i.e. abruptness or brevity. To define sudden as meaning only unexpected or unintended, and therefore as a mere restatement of accidental, would render the suddenness requirement mere surplusage.

*Lower Paxon Twp.,* 557 A.2d at 399–402.

Superior Court, disinclined to revisit the interpretation established in *Lower Paxon Twp.,* also rejected the meaning of "sudden and accidental" advanced by appellants. Thus both courts found the words unambiguous and interpreted them as commonly used, to mean pollution which occurs abruptly over a short period of time.

 Regardless of the viability of *Lower Paxon Twp., supra,* the court appears to have misconstrued appellants' argument. The court apparently understood appellants' argument to be that the insurance industry's 1970 memorandum *created* the "custom in the industry" rather than that the memorandum *was evidence of* a settled usage at the time. Certainly one memorandum does not create a custom. Yet it is strong evidence that a custom exists, particularly when it was drafted by a consortium of insurers purporting to represent the industry as a whole.

Appellants allege that the 1970 memorandum did two things. First, it promised the insurance department that the new language proposed to be incorporated in the CGLPs did not reduce the coverage provided by the policies. The insurance department was thus entreated to approve the new language without requiring a reduction in premiums. This is the regulatory estoppel claim. The second effect of the 1970 memorandum, according to appellants, was to make a public statement that in the insurance industry the words "sudden and accidental" have a special meaning—that they mean the same thing as the words "unexpected and unintended" and the two phrases are interchangeable.

The portion of the memorandum at issue is not as clear as appellants argue. It does not say, in so many words, that "sudden and accidental" means "unexpected and unintended" in the insurance industry. What the memorandum stated to the Pennsylvania insurance department was that: *"Coverage is continued for pollution or contamination caused injuries when the pollution or contamination results from an accident* except that no coverage will be provided under certain operations for injuries arising out of discharge or escape of oil into any body of water." Brief for appellants at 15 (emphasis added). Focusing on the emphasized portion of the quotation (the remainder of the sentence mentions a new exclusion not at issue in this case), the memorandum appears to state that coverage was to be continued for both gradual and abrupt pollution or contamination as it had theretofore been provided in existing comprehensive general liability policies. The policies provide coverage for damages arising out of an occurrence, defined as "an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage that was neither expected nor intended from the standpoint of the insured."

On remand, the trial court must determine whether the emphasized portion of the memorandum—"coverage is continued for pollution or contamination caused injuries when the pollution or contamination results from an accident"—means what appellants claim it means. The court must also determine whether the purpose of the memorandum was to assure the department that there was no change or reduction in the risks covered by the policy, and the existence of the asserted specialized usage of this terminology in the industry.

Thus, despite the careful analysis of the words "sudden and accidental" in *Lower Paxon Twp., supra,* which was based solely on the common meaning of the terms and did not take account of the special usage in the trade, we believe appellants have properly pleaded that the comprehensive general liability policies at issue do indeed provide coverage for both gradual and abrupt pollution or contamination so long as it was unexpected and unintended.

It was error, therefore, to sustain the demurrer and dismiss the complaint on the authority of *Lower Paxon Twp., supra,* as well as to disregard the effect of regulatory estoppel. Accordingly, we will remand for further proceedings in the trial court.

The order of Superior Court is reversed and the case is remanded for further proceedings consistent with this opinion.

Justice NIGRO and Justice NEWMAN did not participate in the consideration or decision of this case.

Justice SAYLOR files a dissenting opinion in which Justice CASTILLE joins.

SAYLOR, Justice, dissenting.

As I view the majority's reliance upon custom and usage in construing the scope of the pollution exclusion to be inconsistent with the analysis in *Madison Constr. Co. v. Harleysville Mut. Ins. Co.,* 557 Pa. 595, 735 A.2d 100 (1999), I respectfully dissent. The words of an insurance policy are to be interpreted in their natural, plain, and ordinary sense, and only if the policy language is ambiguous is resort to be made to extrinsic evidence. *See Madison,* 557 Pa. at 608–09, 735 A.2d at 108. While certainly reference to trade usage is available to explain material terms of certain specialized contracts, it should not be utilized to create a variance from the agreement. *See generally* 21A Am.Jur.2d Customs and Usages § 25 (1998)(stating that "parol or extrinsic evidence of a usage or custom is not admissible where the intent and meaning of the parties as expressed in a contract are clear and unambiguous, especially where the purpose of the evidence is to contradict, vary, modify, qualify, or override the plain, unambiguous terms"). Moreover, I disagree that the form of custom and usage alleged is a relevant consideration in the present context, involving, not specialized terms of a document negotiated between participants in some particular trade or industry, but the standard terms of a comprehensive general liability policy offered to a widely diverse business public. Rather, I agree with the *en banc* decision of the Superior Court, which con-

cluded that the terms "sudden and accidental" should be interpreted according to their ordinary usage, should be viewed as clear and unambiguous, and should be deemed to include a temporal element connoting an event that is abrupt and lasting only a short time. *See Sunbeam Corp. v. Liberty Mut. Ins. Co.*, 740 A.2d 1179, 1186–88 (Pa.Super.1999) (*en banc*). *Cf. Madison*, 557 Pa. at 608–10, 735 A.2d at 108–09 (construing the terms "discharge, dispersal, seepage, migration, release or escape" in the absolute pollution exclusion clause according to ordinary usage).

In addition, although I am troubled by the representations alleged to have been made by the insurance industry to the Insurance Commissioner concerning the modification of the language of the pollution exclusion, I do not agree that a claim predicated on such assertions should proceed at the behest of an insured on a theory of regulatory estoppel, at least in the circumstances presented. Significantly, as aptly noted by the trial court (the Honorable R. Stanton Wettick, Jr.), the representations alleged would have occurred thirty years ago, and the Insurance Department did not alter its regulations and approval practices after it obviously must have become aware of the interpretation that the insurance industry subsequently accorded to the "sudden and accidental" clause, nor has it sought to intervene on behalf of Appellants herein. I would also note that such an application of the regulatory estoppel theory has not been previously recognized by the appellate courts of this Commonwealth; indeed, most other jurisdictions have rejected arguments in this context based upon regulatory estoppel. *See generally SnyderGeneral Corp. v. Great American Ins. Co.*, 928 F.Supp. 674, 682 (N.D.Tex.1996) (collecting cases).[1] Finally, in my view, the allegations of the complaint provide a tenuous basis to support an inquiry into the internal decision making of a coordinate branch of government, partic-

---

1. With respect to the majority's allusion to the theory of judicial estoppel, such theory was not advanced by the appellants as a ground for relief in their complaint, and the pertinent representations of the insurance industry are not alleged to have been made in an adjudicative context.

ularly in light of the separation of powers concerns implicated in doing so.

Justice CASTILLE joins this dissenting opinion.