NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-4037
_____

HUSSEY COPPER, LTD.,
                                        Appellant

v.

ARROWOOD INDEMNITY COMPANY,
f/k/a ROYAL INSURANCE COMPANY


_____


On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C.  Nos. 07-cv-00758 & 07-cv-01286)
District Judge: Honorable Joy Flowers Conti
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on July 16, 2010

Before: FUENTES and VANASKIE, Circuit Judges,
and DITTER,* District Judge.

(Opinion Filed: August 23, 2010)



OPINION OF THE COURT



_____

        * Honorable J. William Ditter, United States District Judge for the Eastern District
of Pennsylvania, sitting by designation.

FUENTES, Circuit Judge:

Hussey Copper, Ltd. ("Hussey") appeals the District Court's order granting summary judgment to Arrowood Indemnity Company ("Arrowood").[1] We have jurisdiction under 28 U.S.C. § 1291 and will affirm.[2]

**I.**

Because we write primarily for the parties, we discuss the facts only to the extent necessary for resolution of the issues raised on appeal. Hussey sued Arrowood seeking defense and indemnity pursuant to its commercial general liability policy for a lawsuit brought against it by the Kane County Public Building Commission (the "Building Commission"). The Building Commission complaint alleged that lead-coated copper roofing panels, produced by Hussey and installed at the Kane County Judicial Center in Kane County, Illinois, had eroded, resulting in the contamination of a retention pond adjacent to the site. The Illinois Environmental Protection Agency (the "Illinois EPA"), upon being informed of the contamination, ordered the Building Commission to remediate the lead and copper pollution in and around the pond. Upon completion of the remediation project, the Building Commission sued Hussey in Illinois state court seeking recovery of its costs and expenses. Hussey sought indemnity from Arrowood.

---

[1] At the time many of the events underlying this lawsuit transpired, Arrowood was known as Royal Insurance Company. For simplicity, we refer to Appellee as Arrowood throughout this opinion.

[2] We exercise plenary review over the District Court's entry of summary judgment. See Business Edge Group, Inc. v. Champion Mortg. Co., Inc., 519 F.3d 150, 153 n.5 (3d Cir. 2008).

At issue is a broad exclusion in Hussey's insurance policy that limits coverage for pollution-related damages. Section f.(2) of the exclusion bars coverage for:

Any loss, cost or expense arising out of any:

(a)     Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(b)     Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

(App. at 103.)   Arrowood declined to indemnify Hussey, claiming that under section f.(2)(a) of this provision, Hussey's liability to the Building Commission was outside the scope of the policy. Hussey ultimately settled with the Building Commission and filed suit against Arrowood, alleging that Arrowood violated the insurance contract when it failed to indemnify Hussey.

The parties filed cross-motions for summary judgment. The District Court ruled in Arrowood's favor, finding that the Building Commission suit fell unambiguously within the scope of the pollution exclusion clause. However, the Court permitted Hussey to conduct discovery as to whether judgment should be entered in its favor under the doctrine of regulatory estoppel based upon statements the Insurance Services Office made to Pennsylvania insurance regulators when seeking approval for its insurance policies. The District Court ultimately entered judgment in Arrowood's favor, finding that

Arrowood was not estopped from asserting that the pollution exclusion clause applied to the Building Commission's claims. Hussey thereafter filed this timely appeal.

**II.**

Hussey raises two issues on appeal—it contends (1) that the pollution exclusion provision invoked by Arrowood and enforced by the District Court does not unambiguously exclude coverage for the Building Commission's lawsuit, and (2) that the District Court erred in concluding that the doctrine of regulatory estoppel did not bar Arrowood from relying upon the pollution exclusion to deny coverage. For all of the reasons persuasively stated in the Magistrate Judge's reports and recommendations and the District Court's opinion, as well as for the reasons set forth below, we disagree with Hussey and will affirm the entry of summary judgment in Arrowood's favor.

The parties agree that Pennsylvania law applies to Hussey's claim against Arrowood. We recently described the relevant considerations for interpreting an insurance policy under Pennsylvania law as follows:

> Our inquiry is straightforward. We look first to the terms of the policy which are a manifestation of the intent of the parties. When the language of the policy is clear and unambiguous, we must give effect to that language. However, when a provision in the policy is ambiguous, the policy is to be construed in favor of the insured. Next, we compare the terms of the policy to the allegations in the underlying claim. It is well established that an insurer's duties under an insurance policy are triggered by the language of the complaint against the insured.

Nationwide Mut. Ins. Co. v. CPB Intern., Inc., 562 F.3d 591, 595 (3d Cir. 2009) (quotation marks and citations omitted). Where "the language of a policy is clear and

-4-

unambiguous, we must apply its plain and ordinary meaning, and not struggle to create ambiguity solely for the purpose of finding coverage where none exists." Techalloy Co., Inc. v. Reliance Ins. Co., 487 A.2d 820, 826 (Pa. Super. Ct. 1984) (citation omitted). "Contractual language is ambiguous if 'it is reasonably susceptible of different constructions and capable of being understood in more than one sense.'" Gardner v. State Farm Fire and Cas. Co., 544 F.3d 553, 558 (3d Cir. 2008) (quoting Hutchison v. Sunbeam Coal Corp., 519 A.2d 385, 390 (Pa. 1986)).

We agree with Arrowood that the Building Commission's suit against Hussey falls squarely within the unambiguous language of the insurance contract's pollution exclusion provision, which is not reasonably susceptible to multiple interpretations. Section f.(2)(a) of the pollution exclusion clause is sweeping—it excludes from coverage "[a]ny loss, cost or expense arising out of any . . . [r]equest, demand or order that any insured or others . . . in any way respond to, or assess the effects of pollutants."[3] (App. at 103 (emphasis added).) We conclude that Hussey's liability to the Commission is without question a cost of Hussey's that arises out of the Illinois EPA's order compelling the Building Commission to test for and clean up the effects of pollutants.[4] "Cost," Black's Law Dictionary makes plain, is synonymous with "expenditure," which is defined as "[a] sum paid out." Black's Law Dictionary 397, 658 (9th ed. 2009). As a result of the Building

---

[3] Courts within and outside of Pennsylvania have interpreted this pollution exclusion provision broadly. See Coal Heat, Inc. v. U.S. Fidelity and Guaranty Co., No. 99-CV-5647, 2000 WL 1689713, at *6-7 (E.D. Pa. Nov. 2, 2000) (citing cases).

[4] Hussey does not challenge the designation of lead and copper as pollutants.

Commission's lawsuit against Hussey, Hussey incurred such an expenditure in the form of its liability to the Building Commission. Such an expenditure manifestly "aris[es] out of" the Illinois EPA's "order that any insured or others"—the "other[]" here being the Building Commission—respond to the pollution caused by the erosion of Hussey's roofing panels.[5] (App. at 103.) The "plain and ordinary meaning" of the broad pollution exclusion clause unambiguously encompasses Hussey's liability to the Building Commission. Techalloy, 487 A.2d at 826.

Hussey advances several arguments in its effort to show that the language of the pollution exclusion is ambiguous, but we do not find its arguments persuasive. Hussey's strongest argument is its suggestion that adopting the above-described construction of section f.(2)(a)'s plain language would render section f.(2)(b) surplusage. See In re Cendant Corp. Securities Litigation, 454 F.3d 235, 247 (3d Cir. 2006) ("A contract is to be considered as a whole, and, if possible, all its provisions should be given effect . . . .") (citation omitted). According to Hussey, if section f.(2)(a) were interpreted to include liability for a claim brought by an entity ordered by the government to remediate pollution, "then a claim or suit by a governmental authority seeking damages for the cleanup of pollutants likewise would be excluded under section (2)(a). If that were the case, where would be no need for section (2)(b)." (Appellant's Br. at 28.)

_____

[5] We have explained, in applying Pennsylvania law, that the words "arising out of" are "normally given broad construction." Battaglia v. McKendry, 233 F.3d 720, 727 (3d Cir. 2000).

Hussey's argument fails, however, because the plain language of sections f.(2)(a) and f.(2)(b) indicates that the two provisions exclude coverage for pollution-related losses in different circumstances. Section f.(2)(a), its terms make clear, applies when the insured or others are compelled by a "[r]equest, demand or order" (such as the Illinois EPA's order in this case) to respond to or assess the effects of pollutants. (App. at 103.) By contrast, section f.(2)(b) applies when the "governmental authority" itself remediates the pollution and then files a "[c]laim or suit" against the responsible party or parties to recover the costs of remediation. (Id.) That the pollution exclusion provision would contain one clause addressing private remediation of pollution and a separate clause addressing remediation by governmental authorities is not surprising. The Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") itself addresses these two categories of costs in distinct subsections, one of which makes potentially responsible polluters liable for "all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan," and the other of which makes potentially responsible polluters liable for "any other necessary costs of response incurred by any other person consistent with the national contingency plan." 42 U.S.C. §§ 9607(a)(4)(A)-(B). Arrowood's pollution exclusion provision simply tracks CERCLA in separating out these two categories of liability. In sum, our reading of the pollution exclusion clause's unambiguous terms gives effect to both provisions and creates no surplusage, contrary to Hussey's unavailing argument to the contrary.

-7-

We are likewise unpersuaded by Hussey's suggestion that industry custom and usage demonstrates that the insurance industry does not regard section f.(2)(a) as applying to products-based claims like Hussey's. It is true that, even in the absence of contractual ambiguity, "[i]n construing policy language, courts should consider any special usage '[w]here <u>terms</u> are used in a contract which are known and understood by a particular class of persons in a certain special or peculiar sense.'" <u>USX Corp. v. Liberty Mut. Ins. Co.</u>, 444 F.3d 192, 198 (3d Cir. 2006) (quoting <u>Sunbeam Corp. v. Liberty Mut. Ins. Co.</u>, 781 A.2d 1189, 1193 (Pa. 2001)) (emphasis added). But Hussey identifies no "terms" in the instant contract that are subject to special or peculiar meaning. <u>Id.</u> Instead, Hussey simply argues that the <u>entire</u> pollution exclusion provision has an industry-specific meaning. Without providing evidence that a particular term within the policy has an idiosyncratic, industry-specific meaning, Hussey is in effect arguing that the entire contract does not mean what it says. Needless to say, we reject such an unpersuasive contention.

Finally, we are unconvinced by Hussey's argument that Arrowood should be estopped from invoking the pollution exclusion as a result of representations made by agents of the insurance industry to Pennsylvania insurance regulators about the exclusion. The gist of Hussey's argument is that an organization called the Insurance Services Office ("ISO"), on behalf of insurance companies like Arrowood, made representations to state insurance regulators in order to obtain regulatory approval for the pollution exclusion clause. In these statements, Hussey contends, ISO indicated that the clause did not apply

to product-based claims, but now, according to Hussey, Arrowood is trying to benefit by arguing that the exception applies to Hussey's product-based claim, contrary to Pennsylvania's regulatory estoppel doctrine.

We disagree. Hussey is correct that under Pennsylvania's doctrine of regulatory estoppel, an industry that makes representations to a regulatory agency to win agency approval "will not be heard to assert the opposite position when claims are made by [litigants such as] insured policyholders." Sunbeam, 781 A.2d at 1192-93. Here, the District Court properly rejected Hussey's equitable estoppel argument. First, Hussey's evidence of industry representations to Pennsylvania insurance regulators pertains to a different pollution exclusion provision in a different contract than the one at issue in this case; the statements simply are not relevant to any claim for estoppel relating to the contractual language under consideration here. Moreover, even if the ISO representations were relevant to any claim for estoppel concerning this contract (which they are not), we agree with Arrowood that the statements, when read in context, show that the ISO consistently represented to regulators that the pollution exclusion would apply to clean-up costs like those the Building Commission incurred. In other words, ISO's statements were not so contrary to Arrowood's position that Arrowood should be estopped from invoking the pollution exclusion here.[6]

---

[6] We have reviewed the remainder of Hussey's arguments and find that they are without merit.

**III.**

For the foregoing reasons, we will affirm the judgment of the District Court.