PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 11-3123
_____


NATIONWIDE LIFE INSURANCE COMPANY

v.

COMMONWEALTH LAND TITLE
INSURANCE COMPANY,
                              *Appellant*
_____


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-05-cv-00281)
District Judge:  Honorable Ronald L. Buckwalter
_____

Argued June 25, 2012

Before: SLOVITER, CHAGARES, and JORDAN,
*Circuit Judges*

(Filed: July 24, 2012)
_____


Craig R. Blackman  (Argued)
Michelle C. Orloski
Neal R. Troum
Stradley, Ronon, Stevens & Young
Philadelphia, PA  19l03

     Attorneys for Appellant

Justin K. Miller
C. Paul Scheuritzel  (Argued)
Larsson & Scheuritzel
Philadelphia, PA  19102

      Attorneys for Appellee

Edward J. Hayes
Lauren P. McKenna
Fox Rothschild
Philadelphia, PA  19103

      Attorneys for Amicus-Appellants

_____

OPINION OF THE COURT
_____

SLOVITER, *Circuit Judge*.

      This interlocutory appeal requires interpretation of a title insurance policy that contains a widely-used endorsement known as the American Land Title Association 9 Endorsement ("the ALTA 9 Endorsement").  Specifically, this court must decide whether the scope of coverage under ¶ 1(b)(2) of the ALTA 9 Endorsement encompasses losses resulting from entire instruments, or whether the coverage is limited to losses caused by the particular types of encumbrances listed in that paragraph.

## I.

### Background

      Commonwealth Land Title Insurance Co. ("Commonwealth") issued the title insurance policy at issue in this case to Nationwide Life Insurance Co. ("Nationwide") in connection with real property in the Franklin Mills Mall in Philadelphia County, Pennsylvania ("the Property").  The Franklin Mills Mall is a large shopping center specializing in retail stores.  The Property was owned by Liberty Mills

2

Limited Partnership ("Liberty Mills") when Liberty Mills entered into a Master Declaration and Agreement of Easements, Covenants, Conditions and Restrictions (the "Master Declaration") with Liberty Mills Residual Limited Partnership in 1988, which governs all stores in the Mall. Later that year, PMI Associates ("PMI") purchased the Property from Liberty Mills, at which time PMI and Liberty Mills also entered into a Declaration of Restrictions. The Declaration of Restrictions vested Liberty Mills with, inter alia, the right to prior approval of future purchasers of the Property and an express option to purchase.

PMI borrowed $3.5 million from Nationwide in 2001, using the Property as collateral. Nationwide purchased a title insurance policy ("the Policy") from Commonwealth to insure its lender's interest in the Property. The Policy contains a specific endorsement that is known as the ALTA 9 Endorsement, which states (in relevant part):

> The Company [Commonwealth] insures the owner of the indebtedness secured by the insured mortgage [Nationwide] against loss or damage sustained by reason of:
>
> 1. The existence at Date of Policy of any of the following:
> …
>    (b) Unless expressly excepted in Schedule B
>      …
>      (2) Any instrument referred to in Schedule B as containing covenants, conditions or restrictions on the land which, in addition, (i) establishes an easement on the land; (ii) provides a lien for liquidated damages; (iii) provides for a private charge or assessment; (iv) provides for an option to purchase, a right of first refusal or the prior approval of a future purchaser or occupant
>      ….

3

J.A. at 317.[1] Among the documents listed in Schedule B Part I were the Declaration of Restrictions and the Master Declaration, but no specific restriction found within those documents was explicitly listed.

PMI defaulted on its loan from Nationwide in 2003 and conveyed the Property to Nationwide by fee simple deed in lieu of foreclosure. Nationwide attempted to sell the Property to Ironwood Real Estate, LLC ("Ironwood"), but Liberty Mills' successor in interest—Franklin Mills Limited Partnership ("Franklin Mills")—refused to approve Ironwood as a buyer in accordance with the rights conferred by the Declaration of Restrictions.[2] Ironwood's offer to purchase the Property was contingent upon Franklin Mills' approval of the anticipated use by Ironwood of the Property as a technical school. Franklin Mills rejected this proposed use, perhaps as being inconsistent with the use restrictions found within the Declaration of Restrictions, which required the Property to be used "only for the purposes of a variety or general merchandise store" absent prior consent from Franklin Mills. J.A. at 329. These use restrictions were left in force under a settlement agreement reached in another case, in which Nationwide had sued Franklin Mills in an attempt to invalidate the encumbrances on title that prevented this sale. *See Nationwide Life Ins. Co. v. Franklin Mills Assocs. Ltd. P'ship*, No. 04-5049 (E.D. Pa. Feb. 28, 2008), ECF No. 30.

---

[1] The restrictions listed in (i)-(iv) will hereinafter be referred to as "the ¶ 1(b)(2) restrictions."

[2] The parties dispute whether this refusal was based on one of the ¶ 1(b)(2) restrictions or, instead, the use restrictions. The parties agree, however, that whatever restrictions formed the basis for the refusal were found within the Declaration of Restrictions. *See* Appellee's Br. at 6; Reply Br. at 2 n.1 ("There is no dispute that the use restrictions contained within the Declaration of Restrictions were largely (if not solely) to blame for the fall through of this particular sale.").

4

Nationwide submitted a claim for coverage to Commonwealth, asserting that the restrictions relied upon by Franklin Mills to justify its refusal of Ironwood as a purchaser rendered the Property unusable and unsalable. Commonwealth denied Nationwide's claim.

Nationwide filed a complaint in the District Court, and Commonwealth filed a motion to dismiss, asserting that Nationwide was seeking coverage for harm alleged to arise from the Declaration of Restrictions, which was listed in Schedule B and was thus expressly excepted from coverage under the Policy. The District Court granted Commonwealth's motion, and Nationwide appealed.

After oral argument, this court reversed and remanded, holding that "Commonwealth bore the burden of detecting the restrictions stated in the Declaration, and had to list those restrictions explicitly [and not just the Declaration itself] as exceptions to avoid covering loss from them." *Nationwide Life Ins. Co. v. Commonwealth Land Title Ins. Co.*, 579 F.3d 304, 319 (3d Cir. 2009) ("*Nationwide I*").[3]

---

[3] Nationwide argues that Commonwealth's current position is barred by the law of the case doctrine. To the extent that the language in this court's prior opinion appears to suggest that Commonwealth is obligated to cover Nationwide's claim, the procedural posture of the last appeal restricts the impact of this language: this court held only that Commonwealth is obligated to cover Nationwide's claim *if* the facts as alleged in Nationwide's complaint are true. In other words, this court only held that Commonwealth must cover Nationwide's claim *if* the restriction causing Nationwide's harm was covered by the ALTA 9 Endorsement and not expressly excepted from coverage on Schedule B. Because Nationwide asserted its harm was caused by a ¶ 1(b)(2) restriction, this court had no reason to determine whether the failure to list a ¶ 1(b)(2) restriction on Schedule B meant the entire instrument containing that restriction was covered by the ALTA 9 Endorsement. Thus, the question certified for this interlocutory appeal has not yet been

On remand, Nationwide filed an amended complaint, and Commonwealth and Nationwide filed cross-motions for summary judgment. The District Court denied Commonwealth's motion in its entirety and granted Nationwide's motion in part, holding, inter alia, that the Policy with the ALTA 9 Endorsement affords insurance coverage for losses and damages incurred by Nationwide as a result of the Declaration of Restrictions. *See Nationwide Life Ins. Co. v. Commonwealth Land Title Ins. Co.*, No. 05-281, 2011 WL 611802 (E.D. Pa. Feb. 17, 2011).[4]

Commonwealth filed a motion for reconsideration or, alternatively, for interlocutory appeal, and Nationwide filed a response in opposition. The District Court denied the motion for reconsideration but granted a certificate of appealability. The question certified by the District Court is:

> Whether the American Land Title Association 9 Endorsement provides title insurance coverage for whole instruments listed in Schedule B or whether the scope of coverage is limited to particular types of encumbrances.

*Nationwide Life Ins. Co. v. Commonwealth Land Title Ins. Co.*, Order at 1, No. 05-281 (E.D. Pa. Mar. 23, 2011), ECF No. 67.

## II.

### Jurisdiction and Standard of Review

answered by this court, and the law of the case doctrine is inapplicable.

[4] The District Court also held that Nationwide is entitled to appropriate prejudgment interest but that issues of material fact preclude summary judgment as to the questions of Commonwealth's alleged bad faith and the precise determination of damages. *See id.* at *32.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1332.  This court has jurisdiction over this interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

When this case was previously before us, we noted that "[i]nterpretation of an insurance policy is a question of law over which we exercise plenary review." *Nationwide I*, 579 F.3d at 307.  We stated, "[u]nder Pennsylvania law, which applies to this action, we ascertain the intent of the parties by reading the policy as a whole, and we give unambiguous terms their plain meaning.  We also consider evidence of industry custom and practice.  We construe ambiguous terms strictly against the insurer, but avoid reading the policy to create ambiguities where none exist." *Id.* at 307-08 (internal citations and quotation marks omitted); *see also Sunbeam Corp. v. Liberty Mut. Ins. Co.*, 781 A.2d 1189, 1193 (Pa. 2001) ("If words have a special meaning or usage in a particular industry, then members of that industry are presumed to use the words in that special way, whatever the words mean in common usage and regardless of whether there appears to be any ambiguity in the words.").

## III.

### Discussion

Commonwealth does not dispute that Nationwide's harm was caused by provisions within the Declaration of Restrictions.  Commonwealth also does not dispute that ¶ 1(b)(2) of the ALTA 9 Endorsement applies to the Declaration of Restrictions.[5]  Commonwealth argues only that

---

[5] *See also Nationwide I*, 579 F.3d at 309-10 ("[B]ecause the Declaration is an 'instrument referred to in Schedule B as containing . . . restrictions on the land which . . . provides for an option to purchase, a right of first refusal or the prior approval of a future purchaser or occupant,' loss arising from it is covered under paragraph 1(b)(2) of the ALTA 9 Endorsement '[u]nless expressly excepted in Schedule B.'" (alterations in original) (quoting the Policy)).  Specifically, Commonwealth agrees that the Declaration of Restrictions

its listing the Declaration of Restrictions on Schedule B excluded losses arising from that instrument from coverage except as to the ¶ 1(b)(2) restrictions found therein, which (under this court's prior decision) must be expressly listed in Schedule B to be excluded from coverage. Therefore, the remaining question is whether the failure to expressly except a ¶ 1(b)(2) restriction in Schedule B places only losses arising from that specific restriction back into coverage, or whether losses sustained by reason of any provision in the entire instrument in which the ¶ 1(b)(2) restriction is found are placed back into coverage.

The District Court held that "[a]ny loss arising as a result of any portion of that instrument—and not from any particular provision contained therein—falls within the scope of the ALTA 9 Endorsement coverage." *Nationwide*, 2011 WL 611802, at *14 (footnote omitted). The District Court reasoned that "[b]y its plain language, . . . the Endorsement only defines what types of instruments are covered and then clearly insures against *any loss* sustained from the *instrument* itself." *Id.* The District Court noted that "[h]ad the Endorsement meant otherwise, it would have eliminated the language 'any instrument'. . . ." *Id.*

We agree, and thus hold that the ALTA 9 Endorsement provides coverage to losses arising from entire instruments that fit within its plain language, not just the ¶ 1(b)(2) restrictions within those instruments that have not been expressly excepted. If ¶ 1(b)(2) was not intended to cover losses arising due to entire instruments, then the phrase "any instrument" would have been omitted, as it was in ¶ 1(b)(1), (3), (4), and (5) of the same ALTA 9 Endorsement.

Commonwealth and the Amici argue that this plain language interpretation of the ALTA 9 Endorsement provides far more coverage to the insured than the interpretation that is accepted by the vast majority of the title insurance industry. Commonwealth argues that "evidence of the ALTA 9

contains at least an option to purchase and a prior approval of a future purchaser provision. *See* Reply Br. at 6.

endorsement's customary usage within the title insurance industry makes clear that ALTA 9 is intended to provide additional coverage only for harm arising from a very specific category of extraordinary encumbrances that would affect the validity, priority, or enforceability of the insured mortgage— i.e., the ALTA 9 [¶] 1(b)(2) encumbrances." Appellant's Br. at 24. Indeed, it may be that the title insurance industry has been using the ALTA 9 Endorsement with the understanding that it only provides coverage for loss resulting from the ¶ 1(b)(2) restrictions.[6] Nevertheless, caselaw requires us to follow the plain language of the ALTA 9 Endorsement rather than deferring to industry custom and usage that does not give the phrase "any instrument" special meaning, but instead simply ignores that language. *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 363 (3d Cir. 2004) (Under Pennsylvania law, "[w]here . . . the language of an insurance contract is clear and unambiguous, a court is required to enforce that language." (internal quotation marks and citation omitted)); *Sunbeam*, 781 A.2d at 1193 (allowing evidence of the "special meaning" *of words* within an industry); *see also Meyer v. CUNA Mut. Ins. Soc.*, 648 F.3d 154, 167 (3d Cir. 2011) ("[U]nder Pennsylvania law, in close cases, a court should resolve the meaning of insurance policy provisions in favor of coverage for the insured." (citing *Motley v. State Farm Mut. Auto. Ins. Co.*, 466 A.2d 609, 611 (Pa. 1983))).

## IV.

### Conclusion

We will affirm the District Court's holding that the ALTA 9 Endorsement insures against any loss sustained from

---

[6] Both parties address recent proposed amendments to the ALTA 9 Endorsement, which will ensure that the effect of this court's decision will be limited to title insurance policies that were issued with the older version of the ALTA 9 Endorsement. Because the amendments show only that the ALTA 9 Endorsement was changed to reflect a recent relevant court opinion, the significance of the changes can only be determined through speculation.

an instrument that is covered by the plain language of ¶ 1(b)(2). This case will return to the District Court for the determination of damages owed to Nationwide.